IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. ANTHONY HUTT, et al, | : | |
| | : | |
| **Plaintiffs** | : | |
| v. | : | |
| | : | |
| CORRECTIONAL MEDICAL SERVICES, | : | Civil Action No.: 1:08-cv-00184 GMS |
| INC., et al , | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

---

**DEFENDANT, CORRECTIONAL MEDICAL SERVICES, INC.'S
OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Daniel A. Griffith, Esquire
Attorney Bar ID No. 4209
WHITEFORD TAYLOR &
PRESTON, LLC
1220 Market Street, Suite 608
Wilmington, DE   19801
(302) 482-8754
Attorneys for Defendant,
Correctional Medical Services, Inc.

Dated:  May 27, 2008

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

II. SUMMARY OF ARGUMENT ..................................................................... 1

III. CONCISE STATEMENT OF FACTS ........................................................... 2

    A.  As a State Actor Providing Medical Services While "Exercising Powers Conferred On (It) Under Color of the Laws of the State of Delaware", CMS Enjoys Absolute Immunity From Plaintiffs' Federal §1983 Claims And State Law Claims For Medical Negligence. ........................................................................................ 3

CONCLUSION ............................................................................. 7

## TABLE OF CITATIONS

**Cases**

*Abraham v. State of Delaware Department of Corrections et al*, 2007 U.S. Dist. LEXIS 98411 (De. Del. 2007) ............................................................................................................ 4

*Abraham v. State of Delaware Department of Corrections, et al* ................................................ 5

*Castillo v. Costin, et al*, 2006 U.S. Dist. L.Ed. LEXIS 21992 (D. Del. 2006) ...................... 4, 6, 7

*Christopher v. Harbury,* 536 U.S. 403, 406 (2002) ...................................................................... 2

*Hamilton et al v. Civigenics, et al*, 2005 U.S. Dist. LEXIS 2625 (D. Del. 2005) .................... 3, 6

*Hamilton, Castillo and Abraham, supra*. ...................................................................................... 7

*West v. Atkins*, 487 U.S. 42, 48-54, 101 L.Ed. 2d 40 108 Ct. 2250 (1988) ................................ 4

## I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiffs are inmates or former inmates of the Howard R. Young Correctional Institution (HRYCI).  Defendant/Movant, Correctional Medical Services, Inc. (CMS) provides health care services to the inmates at HRYCI pursuant to a contract between CMS and the State of Delaware Department of Corrections ("DOC").

Plaintiffs' Complaint was filed on or about April 4, 2008.  (D.I. 1, Exhibit "A".)  As against CMS, Plaintiffs' Complaint is structured as follows:  each inmate has pled one claim under 42 U.S.C. §1983 for CMS' alleged failure to provide constitutionally adequate medical care in violation of the Eighth Amendment to the United States Constitution, and a second claim for medical negligence under Delaware state law, 18 Del.C. §6801 et seq.

A Waiver of Service was filed on behalf of CMS on May 14, 2008.  (D.I.7).

This is defendant, CMS' Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  SUMMARY OF ARGUMENT

As correctly asserted by Plaintiffs', inasmuch as CMS was at all times providing medical services to the Plaintiffs on behalf of the State of Delaware and pursuant to a contract with the State of Delaware, CMS was acting under color of state law.  As such, according to a consistent body of case law from this Court, CMS is entitled to sovereign immunity to the same extent as the State of Delaware.  More specifically, inasmuch as CMS' relationship with the State of Delaware compels the finding that CMS was acting under color of state law, CMS is immune from Plaintiffs' 42 U.S.C. §1983 claims pursuant to the Eleventh Amendment of the United States Constitution.  CMS is similarly immune from Plaintiffs' state law claims for medical malpractice.

### III. CONCISE STATEMENT OF FACTS[1]

CMS is a corporation providing health care services to prisons and jails throughout the United States. (Exhibit "A", paragraph #7). At all times relevant to this litigation, CMS provided health care services to prisoners incarcerated at HRYCI on behalf of, and pursuant to a contract with, the State of Delaware Department of Corrections ("DOC") (Exhibit "A", paragraph 7).

In their Complaint, the 15 Plaintiffs each have two discrete categories of claims against CMS arising out of the medical treatment provided to them by CMS as part of CMS' employment by the State of Delaware: each inmate has pled (1) a claim under 42 U.S.C. §1983 for failure to provide constitutionally adequate medical care in violation of the Eighth Amendment to the United States Constitution; and (2) a claim for medical negligence under Delaware state law 18 Del.C. §6801 et seq.

It is undisputed that, in providing medical treatment to the Plaintiffs pursuant to its contract with the State of Delaware, CMS was at all time a "state actor". (See Exhibit "A", paragraph 12). In fact, Plaintiffs' Complaint relies upon this fact in alleging "at all times referred to herein, all of the Defendants were acting within the scope of their employment and/or were exercising powers conferred on them under color of the laws of the State of Delaware". (Exhibit "A", paragraph 12.)

---

[1]    For purposes of this application, since this Court must accept as true all well-pled factual allegations in Plaintiffs' Complaint and view them in a light most favorable to Plaintiff, *Christopher v. Harbury,* 536 U.S. 403, 406 (2002), this Concise Statement of Facts is drawn directly and exclusively from Plaintiffs' Complaint.

## IV.  LEGAL ARGUMENT

**A.**    **As a State Actor Providing Medical Services While "Exercising Powers Conferred On (It) Under Color of the Laws of the State of Delaware", CMS Enjoys Absolute Immunity From Plaintiffs' Federal §1983 Claims And State Law Claims For Medical Negligence.**

The issues raised by Plaintiffs' Complaint (i.e., the liability to inmates of a medical provider retained by the State of Delaware) are well known to this Court.  Consistently, this Court has held that a medical treatment provider retained on behalf of the State of Delaware to treat the State's inmates is immune from liability to the inmates under the Eleventh Amendment to the United States Constitution.  The public policy underlying this rule of law is one of common sense:  to the extent that the medical provider is deemed to be a "state actor" and to be "acting under color of state law" sufficient for inmates to *bring* §1983 claims against them, the state-retained medical providers similarly enjoy the "state actor's" *defenses* to such claims, including sovereign immunity under the Eleventh Amendment.

The issues raised by this motion are four-square with those addressed by this Court in ***Hamilton et al v. Civigenics, et al***, 2005 U.S. Dist. LEXIS 2625 (D. Del. 2005).  In ***Hamilton***, an inmate filed an action under 42 U.S.C. §1983 on behalf of himself and allegedly similarly-situated inmates against, among other, Civigenics, a private entity which administered a drug rehabilitation program for incarcerated addicts through a contract with the State of Delaware.  (In this respect, Civigenics' status is virtually identical to that of CMS in this case, inasmuch as CMS is a private company retained by contract with the State of Delaware to provide treatment to the state's inmates).  In addressing Civigenics' entitlement to sovereign immunity, this Court, in language directly applicable to the claims against CMS in this litigation, held :

> First, Civigenics and its employees are state actors because they are employed by the State of Delaware to provide treatment to inmates and, therefore, acted under color of

3

> law for purposes of §1983 when undertaking their duties in
> treating the Plaintiffs' addictions. (See *West v. Atkins*, 487
> U.S. 42, 48-54, 101 L.Ed. 2d 40 108 Ct. 2250 (1988)
> (holding that a physician who is under contract with the
> State to provide medical services to inmates at a state-
> prison hospital on part-time basis acts "under color of state
> law within the meaning of §1983). (See *Hamilton, et al v.
> Civigenics, et al*, attached as Exhibit "B", p. 6).

This Court therefore dismissed the §1983 claims against Civigenics, concluding that "as such

Civigenics and its employees are state actors and have not waived sovereign immunity.

Accordingly, the Court will dismiss these Plaintiffs' claims against these Defendants in their

official capacities".[2] *Ibid.*

This Court's application of sovereign immunity to claims against state-retained medical

providers for inmates has been consistent since the *Hamilton* decision. For instance, in *Castillo

v. Costin, et al*, 2006 U.S. Dist. L.Ed. LEXIS 21992 (D. Del. 2006) (attached as Exhibit "C"),

this Court held:

> . . . Because (defendants) are employed by the State of
> Delaware to provide treatment to inmates they are state
> actors. As a result, for the purposes of §1983 (defendants
> act) under color of state law. (Citations omitted). This
> Court has previously determined that Civigenics, as a state
> actor, has not waived sovereign immunity to suits in federal
> court (Citations omitted). Accordingly, it is immune from
> suit under §1983. The claims against Civigenics, therefore,
> as dismissed. (See Exhibit "C", p. 2-3).

This Court reiterated these concepts just a few months ago in the matter of *Abraham v.

State of Delaware Department of Corrections et al*, 2007 U.S. Dist. LEXIS 98411 (D. Del.

2007) (attached as Exhibit "D"). In *Abraham*, this Court first addressed the entitlement of the

---

[2]   Inasmuch as this application is brought on behalf of CMS only, there is no need to discuss any distinction
between individual versus official capacity.

State of Delaware Department of Corrections ("DOC") to immunity under the Eleventh

Amendment:

> . . . The DOC, an agency of the State of Delaware, is named as a defendant. "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant". (Citations omitted). The State of Delaware has not waived its sovereign immunity under the Eleventh Amendment. (Citations omitted). Hence, as an agency of the State of Delaware, the DOC is entitled to immunity under the Eleventh Amendment. (Citations omitted). (Exhibit "D", p. 3).

The Court next addressed the extent to which this sovereign immunity under the Eleventh

Amendment extended to a medical provider retained under contract with the State of Delaware:

> Civigenics is also a named defendant. Civigenics and its employees are state actors because they are employed by the State of Delaware to provide treatment to inmates. As a result, for the purposes of §1983, Civigenics acts under color of state law. (Citations omitted). This Court has previously determined that Civigenics as a state actor, has not waived sovereign immunity to suits in federal court. (Citations omitted). Accordingly, it is immune from suit under §1983. (See Exhibit "D", p. 4).

The status of CMS in this litigation is so identical to that of Civigenics in these

referenced cases that their names could almost be used interchangeably. Both provide medical

services to inmates under contract with the State of Delaware. Civigenics' entitlement to

Eleventh Amendment immunity was based upon its status as a state actor which, when providing

medical treatment to inmates, acted under color of state law. *See Abraham v. State of Delaware*

*Department of Corrections, et al* ("Civigenics and its employees are state actors because they

are employed by the State of Delaware to provide treatment to inmates. As a result, for purposes

of §1983 Civigenics acts under color of state law").

Here, the support for applying sovereign immunity under the Eleventh Amendment to CMS is even easier to find than in the cited decisions because *Plaintiffs have alleged in their Complaint all of the facts necessary to support such a finding.* Whereas the Plaintiff in *Hamilton* denied that the medical treatment provider was a state actor (See Exhibit "B", p. 6), Plaintiffs here specifically and unequivocally acknowledge and allege that CMS was a state actor, acting under color of state law while providing the medical treatment which is the subject of this litigation: "At all times referred to herein, all of the Defendants were acting within the scope of their employment and/or were exercising powers conferred on them under color of the laws of the State of Delaware". (See Exhibit "A", p. 12).

In addition, as this Court made clear in *Hamilton*, as a state actor providing medical services pursuant to a contract with the State of Delaware and therefore acting "under color of state law", CMS cannot be held liable for Plaintiffs' state law medical malpractice claims. The State of Delaware Tort Claims Act, 10 Del.C. §4010, et al., provides for certain exceptions to a state actor's immunity, none of which operate as a waiver of immunity for claims arising out of medical treatment to inmates. As this Court in *Hamilton* observed:

> Moreover, Civigenics and its employees have not waived sovereign immunity (under state law) because *Del. Code Ann. tit. 10 §4012(2)* and *Del. Code. Ann. Tit. 18 §6511* are inapplicable to these defendants. *Section 4012(2)* states that a governmental entity will be liable for negligent acts or omissions causing property damage, bodily injury, or death "in the construction, operation or maintenance of any public building or the appurtenances thereto ...". Because Civigenics and its employees are not involved in the construction, operation or maintenance of (the Correctional Institution), this provision does not apply to them. Similarly, *Section 6511* has no relevance to this litigation. While *Section 6511* expressly consents to suits against the state in state court, the Delaware courts have held that *Section 6511* does not waive sovereign immunity to suits in federal court. (Citations omitted). (See Exhibit "B", p. 6).

6

In sum, CMS provided the medical treatment which is the subject of this litigation to the inmates under a contract with the State of Delaware.  Case law has made clear, and Plaintiffs have candidly alleged, that in this capacity, CMS was "exercising powers conferred on (it) under color of the laws of the State of Delaware" (see Exhibit "A", p. 12).  A consistent body of case law from this very Court has made abundantly clear that an entity providing medical treatment to inmates pursuant to a contract with the State of Delaware acts under color of the state law and is therefore entitled to sovereign immunity under the Eleventh Amendment as a matter of law. *Hamilton, Castillo and Abraham, supra*.

## CONCLUSION

For all the foregoing reasons, it is respectfully requested that this Honorable Court dismiss Plaintiffs' claims as to Correctional Medical Services, Inc. with prejudice for failure to state a claim upon which can be granted.

WHITEFORD TAYLOR PRESTON, LLC


_____*/s/ Daniel A. Griffith*_____
Daniel A. Griffith, Esquire (No. 4209)
1220 Market Street, Suite 608
Wilmington, DE    19801
(302) 482-8754

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

J. ANTHONY HUTT,      :
THEODORE T. MAREK,     :
CARL MARTIN,       :
MICHAEL DERRICKSON,    :
HIPPILITO MOURE,      :
JAMES N. McCARDELL,     :
CHARLES SMITH,      :
CHARLIE VILLAFANE,     :
WILLIAM SELBY,      :
KEVIN JONES,       : Civil Action No. _____
JAMES SMITH,       :
PAUL MILLER,       :
TERRANCE SIRMANS,     :
SAMUEL JONES,      :
JOHN CHAVOUS,      :
            :
  Plaintiffs,       : JURY TRIAL DEMANDED
            :
    v.        :
            :
STANLEY W. TAYLOR, JR., individually and :
in his official capacity as Commissioner, State :
of Delaware Department of Corrections; :
CARL C. DANBERG, in his official capacity as :
Commissioner, State of Delaware Department :
of Corrections; RAPHAEL WILLIAMS, :
individually and in his official capacity as :
Warden, Howard R. Young Correctional :
Institution; PHILIP MORGAN,  in his official :
capacity as Warden, Howard R. Young :
Correctional Institution;     :
JOYCE TALLEY, individually and in her :
official capacity as Chief, Bureau of  :
Management Services, Delaware Department :
of Corrections; CORRECTIONAL MEDICAL :
SERVICES, INC.,      :
and its JOHN DOE EMPLOYEES,  :
            :
  Defendants.      :

**COMPLAINT**

**JURISDICTION AND VENUE**

1.  The claims set forth herein arise and are instituted pursuant to 42 U.S.C. §1983 to redress the deprivation by the defendants, acting under color of state law, of rights, privileges and immunities secured to the plaintiffs by the Eighth and Fourteenth Amendments to the Constitution of the United States.

2.  This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and §1343(a)(3) and 42 U.S.C. §1983.  Declaratory relief is sought under 28 U.S.C. §2201 and 2202.

3.  This Court also has supplemental jurisdiction over the claims which allege "Medical Negligence" under Delaware state law pursuant to 28 U.S.C. § 1367.

4.  All of the named plaintiffs have exhausted their administrative remedies as required by the Prison Litigation Reform Act of 1996, *42 U.S.C. § 1997e*, by filing appropriate medical grievances with the appropriate prison officials concerning the acts and omissions alleged herein.

5.  Venue is proper in the District of Delaware pursuant to 28 U.S.C. §1391(a).  The acts alleged herein were committed within the State of Delaware and the defendants are subject to personal jurisdiction in this district.

**THE PARTIES**

6.  At all times referred to herein, the plaintiffs were inmates in the custody of the Delaware Department of Correction and were incarcerated at the Howard R. Young Correctional Institution ("HRYCI"), 1301 E. 12th Street, Wilmington, DE 19801.

7.  Defendant Correctional Medical Services, Inc. ("CMS") is a corporation providing healthcare services to prisons and jails throughout the United States.  CMS has its headquarters

at 12647 Olive Boulevard, St. Louis, MO 63141. At the time of the acts alleged herein, CMS provided healthcare services to prisoners housed at HRYCI under a contract with the Department of Corrections of the State of Delaware ("DOC").

8. At all times referred to herein, defendant Stanley W. Taylor, Jr. ("Taylor"), was the Commissioner of the DOC, with an office located at 245 McKee Road, Dover, DE 19904. In his capacity as Commissioner, Taylor was the legal custodian of all prisoners sentenced to a term of incarceration by the courts of Delaware. Taylor was responsible for the safe, secure and humane housing of those prisoners, including the plaintiffs. Under 11 *Del.C.* §6517, Taylor was also responsible for administering the medical/treatment services contract between DOC and CMS, or appointing a designee to administer the contract between DOC and CMS. Subsequent to the occurrence of the events alleged herein, Taylor resigned his position as Commissioner and Carl C. Danberg ("Danberg") was appointed as Commissioner.

9. At all times referred to herein, defendant Joyce Talley ("Talley") was the Chief, Bureau of Management Services of the Delaware Department of Corrections, with an office located at 245 McKee Road, Dover, DE 19904. In her capacity as Bureau Chief, Talley was responsible for oversight of inmate health care services, including administration of the contract between DOC and CMS.

10. At all times relevant hereto, defendant Raphael Williams ("Williams") was the Warden of HRYCI. Defendant Williams was the legal custodian of all prisoners housed at HRYCI, including the plaintiffs, and was responsible for the safe, secure and humane housing of those prisoners. Subsequent to the occurrence of the events alleged herein, Williams resigned his position as Warden and was replaced by Philip Morgan ("Morgan").

-3-

11.  The identities and locations of the John Doe CMS employees, who participated in the acts and conduct alleged herein, are currently unknown to plaintiffs and will be determined through discovery.  At all times relevant hereto, these individuals were acting under color of state law and within the scope of their employment.

12. At all times referred to herein, all of the defendants were acting within the scope of their employment and/or were exercising powers conferred on them under color of the laws of the State of Delaware.

## Count I - Claims of J. Anthony Hutt
### Allegations of Fact

13.  Plaintiff J. Anthony Hutt ("Hutt") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

14.  At all times relevant hereto, Hutt has been in the custody of the Delaware Department of Corrections.  In 2004, Hutt was diagnosed with Diabetes (Type-2). Since July 2005, Hutt was housed at HRYCI.   Since the date of that initial diagnosis, Hutt has received treatment at HRYCI for his Diabetes, including testing of his blood sugar levels and insulin injections.

15.  On or about July 20, 2006, Hutt was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Hutt as "Nurse Beth" ("John Doe #1"), used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

16.  On or about August 31, 2006, Hutt was informed by Jeremy Wilkerson and Dr. Jay Conlon, employees of CMS,  that he had tested positive for Hepatitis C.  Hutt contracted Hepatitis C as a direct and proximate result of the conduct and acts described in Paragraph 15 herein.

17.  During July 2007, Hutt began to exhibit symptoms which indicated he had contracted Bell's Palsy.  Hutt contracted Bell's Palsy as a direct and proximate result of the conduct and acts described in Paragraph 15 herein.

18.  As a direct and proximate result of the conduct and acts described in Paragraph 15 herein, Hutt has suffered physical and psychological pain and physical injury.

### Hutt Claim One
#### (42 U.S.C. § 1983 - Inadequate Medical Care)

19.    Plaintiff Hutt realleges and incorporates by reference herein the allegations in Paragraphs 1-18 of this Complaint.

20.    In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Hutt's serious medical needs and subjected Hutt to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.   In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Hutt, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Hutt's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

21.    In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Hutt's serious medical needs and subjected Hutt to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Hutt's diabetic condition by committing the acts alleged in Paragraph 15 herein;

(b) as a result of the actions described in Paragraph 15 herein, defendant CMS caused Hutt to be exposed to and contract Hepatitis C and Bell's Palsy and also acted to expose Hutt to the risk of contracting other diseases and conditions, such as HIV/AIDS and TB.

22.   As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Hutt's reasonable medical needs, Hutt has suffered and will continue to suffer extreme physical and psychological pain, physical injury, emotional distress and permanent disability.

**Hutt Claim Two**
**(Medical Negligence)**

23.  Plaintiff Hutt realleges and incorporates by reference herein the allegations in paragraphs 1-18 of this Complaint.

24.  Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

25.  As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 24, Hutt has suffered and will continue to suffer extreme physical and psychological pain, physical injury, emotional distress and permanent disability.

**Count II - Claims of Theodore T. Marek**
**Allegations of Fact**

26.  Plaintiff Theodore T. Marek ("Marek") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

27.  At all times relevant hereto, Marek has been in the custody of the Delaware Department of Corrections. In August 2005, Marek was diagnosed with Diabetes (Type-2).  Since the date of that initial diagnosis, Marek has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.  Since June 2006, Marek has been housed at HRYCI.

28.  On or about July 20, 2006, Marek was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Marek as "Nurse Beth" ("John Doe #1"), used a single hypodermic needle/syringe to draw blood

from himself and other inmates for testing of blood sugar levels and then used the same needle /syrInge to draw insulin from a multiple dose vial and inject him with said insulin.

29. Since July 20, 2006, Marek has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle. This testing has not been carried out on a regular basis and Marek has not been informed of the results of any of the tests.

30. As a direct and proximate result of the conduct and acts described in Paragraph 28 herein, Marek has suffered physical and psychological pain including anxiety and depression.

### Marek Claim One
### (42 U.S.C. § 1983 - Inadequate Medical Care)

31. Plaintiff Marek realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 27-30 of this Complaint.

32. In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Marek's serious medical needs and subjected Marek to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution. In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Marek, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

-9-

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Marek's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

33.   In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Marek's serious medical needs and subjected Marek to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Marek's diabetic condition by committing the acts alleged in Paragraph 28 herein;

(b ) as a result of the actions described in Paragraph 28 herein, defendant CMS caused Marek to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

34.   As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Marek's reasonable medical needs, Marek has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Marek Claim Two
### (Medical Negligence)

35.   Plaintiff Marek realleges and incorporates by reference herein the allegations in paragraphs 1-12 and Paragraphs 27-30 of this Complaint.

36.   Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees

-10-

failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

37.  As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 28, Marek has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count III - Claims of Carl Martin
### Allegations of Fact

38.  Plaintiff Carl Martin ("Martin") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

39.  At all times relevant hereto, Martin has been in the custody of the Delaware Department of Corrections. Since February 2006, Martin has been housed at HRYCI.  In 1995, Martin was diagnosed with Diabetes (Type-2).  Since the date of that initial diagnosis, Martin has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

40.  On or about July 20, 2006, Martin was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Martin as "Nurse Beth" ("John Doe #1"),  used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

41.  Since July 20, 2006, Martin has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  This testing has not been carried out on a regular basis and Martin has not been informed of the results of any of the tests.

-11-

42.  As a direct and proximate result of the conduct and acts described in Paragraph 40 herein, Martin has suffered physical and psychological pain including anxiety and depression.

## Martin Claim One
### (42 U.S.C. § 1983 - Inadequate Medical Care)

43.  Plaintiff Martin realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 39-42 of this Complaint.

44.  In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Martin's serious medical needs and subjected Martin to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.  In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Martin, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Martin's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

45.  In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Martin's serious medical needs and subjected Martin to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Martin's diabetic condition by committing the acts alleged in Paragraph 40 herein;

(b ) as a result of the actions described in Paragraph 40 herein, defendant CMS caused Martin to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

46.   As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Martin's reasonable medical needs, Martin has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

**Martin Claim Two**
**(Medical Negligence)**

47.   Plaintiff Martin realleges and incorporates by reference herein the allegations in paragraphs 1-12 and Paragraphs 39-42 of this Complaint.

48.   Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

49.   As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 40, Martin has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

**Count IV - Claims of Michael Derrickson**
**Allegations of Fact**

50.  Plaintiff Michael Derrickson ("Derrickson") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

51.  Between May 19, 2006 and August 8, 2006, and from October 30, 2006 to the present time, Derrickson was in the custody of the Delaware Department of Corrections and was housed at HRYCI.  In January 2003, Derrickson was diagnosed with Diabetes (Type-2).  Since the date of that initial diagnosis, Derrickson has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

52.  On or about July 20, 2006, Derrickson was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Derrickson as "Nurse Beth" ("John Doe #1"),  used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

53.  Since July 20, 2006, Derrickson has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  This testing has not been carried out on a regular basis and Derrickson has not been informed of the results of any of the tests.

54.  As a direct and proximate result  of the conduct and acts described in Paragraph 52 herein, Derrickson has suffered physical and psychological pain including anxiety and depression.

**Derrickson Claim One**
**(42 U.S.C. § 1983 - Inadequate Medical Care)**

55.  Plaintiff Derrickson realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 51-54 of this Complaint.

56. In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Derrickson's serious medical needs and subjected Derrickson to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution. In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Derrickson and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Derrickson's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

57. In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Derrickson's serious medical needs and subjected Derrickson to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Derrickson's diabetic condition by committing the acts alleged in Paragraph 52 herein;

(b ) as a result of the actions described in Paragraph 52 herein, defendant CMS caused Derrickson to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

-15-

58. As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Derrickson's reasonable medical needs, Derrickson has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Derrickson Claim Two
### (Medical Negligence)

59. Plaintiff Derrickson realleges and incorporates by reference herein the allegations in paragraphs 1-12 and Paragraphs 51-54 of this Complaint.

60. Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801. Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

61. As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 52, Derrickson has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count V - Claims of Hipolito Moure
### Allegations of Fact

62. Plaintiff Hipolito Moure ("Moure") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

63. Since May 2, 2006 and continuing up to the present time,, Moure was in the custody of the Delaware Department of Corrections and was housed at HRYCI. Prior to his incarceration, Moure was diagnosed with Diabetes (Type-2). Since the date of that initial diagnosis, Moure has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

-16-

64. On or about July 20, 2006, Moure was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Moure as "Nurse Beth" ("John Doe #1"), used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

65. Since July 20, 2006, Moure has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle. This testing has not been carried out on a regular basis and Moure has not been informed of the results of any of the tests.

66. As a direct and proximate result of the conduct and acts described in Paragraph 64 herein, Moure has suffered physical and psychological pain including anxiety and depression.

-17-

**Moure Claim One**
**(42 U.S.C. § 1983 - Inadequate Medical Care)**

67.   Plaintiff Moure realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 63-66 of this Complaint.

68.   In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Moure's serious medical needs and subjected Moure to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.   In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Moure, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Moure's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

69.   In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Moure's serious medical needs and subjected Moure to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Moure's diabetic condition by committing the acts alleged in Paragraph 64 herein;

-18-

(b ) as a result of the actions described in Paragraph 64 herein, defendant CMS caused Moure to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

70.    As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Derrickson's reasonable medical needs, Moure has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

## Moure Claim Two
### (Medical Negligence)

71.    Plaintiff Moure realleges and incorporates by reference herein the allegations in paragraphs 1-12 and Paragraphs 63-66 of this Complaint.

72.    Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

73.    As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 64, Moure has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

## Count VI - Claims of James N. McCardell
### Allegations of Fact

74. Plaintiff James N. McCardell ("McCardell") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

75. Since September 2004 and continuing up to the present time, McCardell was in the custody of the Delaware Department of Corrections and was housed at HRYCI. Prior to his incarceration, in February 1996, McCardell was diagnosed with Diabetes (Type-2). Since the date of that initial diagnosis, McCardell has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

76. On or about July 20, 2006, McCardell was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to McCardell as "Nurse Beth" ("John Doe #1"), used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

77. Since July 20, 2006, McCardell has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle. This testing has not been carried out on a regular basis and McCardell has not been informed of the results of any of the tests.

78. As a direct and proximate result of the conduct and acts described in Paragraph 76 herein, McCardell has suffered physical and psychological pain including anxiety and depression.

**McCardell Claim One**
**(42 U.S.C. § 1983 - Inadequate Medical Care)**

79. Plaintiff McCardell realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 75-78 of this Complaint.

80. In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to McCardell's serious medical needs and subjected McCardell to cruel and unusual punishment under color of state law in

violation of the Eighth Amendment to the United States Constitution.  In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including McCardell, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff McCardell's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

81.  In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to McCardell's serious medical needs and subjected McCardell to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of McCardell's diabetic condition by committing the acts alleged in Paragraph 76 herein;

(b ) as a result of the actions described in Paragraph 76 herein, defendant CMS caused McCardell to be exposed to the risk of contracting other diseases and conditions, such as HIV/AIDS and TB.

82.  As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference McCardell's reasonable medical needs, McCardell has

suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### McCardell Claim Two
### (Medical Negligence)

83. Plaintiff McCardell realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 75-78 of this Complaint.

84. Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801. Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

85. As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 76, McCardell has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count VII - Claims of Charles Smith
### Allegations of Fact

86. Plaintiff Charles Smith ("Charles Smith") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

87. At all times relevant hereto, Charles Smith was in the custody of the Delaware Department of Corrections and was housed at HRYCI. Prior to his incarceration, in February 1996, Charles Smith was diagnosed with Diabetes (Type-2). Since the date of that initial diagnosis, Charles Smith has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

88. On or about July 20, 2006, Charles Smith was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Charles Smith as "Nurse Beth" ("John Doe #1"), used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

89. Since July 20, 2006, Charles Smith has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle. This testing has not been carried out on a regular basis. As a result of said testing, Charles Smith was informed by CMS personnel that he had contracted Hepatitis C.

90. As a direct and proximate result of the conduct and acts described in Paragraph 88 herein, Charles Smith has suffered physical and psychological pain including anxiety and depression.

### Charles Smith Claim One
### (42 U.S.C. § 1983 - Inadequate Medical Care)

91. Plaintiff Charles Smith realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 87-90 of this Complaint.

92. In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Charles Smith's serious medical needs and subjected Charles Smith to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution. In particular, defendants Taylor, Talley and Williams:

-23-

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Charles Smith, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Charles Smith's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

93.  In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Charles Smith's serious medical needs and subjected Charles Smith to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Charles Smith's diabetic condition by committing the acts alleged in Paragraph 88 herein;

(b ) as a result of the actions described in Paragraph 88 herein, defendant CMS caused Charles Smith to contract Hepatitis C and to be exposed to the risk of contracting other diseases and conditions, such as HIV/AIDS and TB.

94.  As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Charles Smith's reasonable medical needs, Charles Smith has suffered and will continue to suffer extreme physical and psychological pain, physical injury and  emotional distress.

**Charles Smith Claim Two**
**(Medical Negligence)**

95.  Plaintiff Charles Smith realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 87-90 of this Complaint.

96.  Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

97.  As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 88, Charles Smith has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count VIII - Claims of Charlie Villafane
### Allegations of Fact

98.  Plaintiff Charlie Villafane ("Villafane") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

99.  Between June 2006 and November 30, 2006, Villafane was in the custody of the Delaware Department of Corrections and was housed at HRYCI.  In 1994, prior to his incarceration, Villafane was diagnosed with Diabetes (Type-2).  Since the date of that initial diagnosis, Villafane has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

100.  On or about July 20, 2006, Villafane was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Villafane as "Nurse Beth" ("John Doe #1"),  used a single hypodermic needle/syringe to draw blood

from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

101.  Since July 20, 2006, Villafane has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  This testing has not been carried out on a regular basis and Villafane has not been informed of the results of any of the tests.

102.  As a direct and proximate result  of the conduct and acts described in Paragraph 100 herein, Villafane has suffered physical and psychological pain including anxiety and depression.

**Villafane Claim One**
**(42 U.S.C. § 1983 - Inadequate Medical Care)**

103.   Plaintiff Villafane realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 99-102 of this Complaint.

104.   In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Villafane's serious medical needs and subjected Villafane to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.   In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Villafane, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Villafane's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

105.   In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Villafane's serious medical needs and subjected Villafane to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Villafane's diabetic condition by committing the acts alleged in Paragraph 100 herein;

(b ) as a result of the actions described in Paragraph 100 herein, defendant CMS caused Villafane to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

106.   As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Villafane's reasonable medical needs, Villafane has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

**Villafane Claim Two**
**(Medical Negligence)**

107.   Plaintiff Villafane realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 99-102 of this Complaint.

108.   Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.   Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

109.   As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 100, Villafane has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

**Count IX - Claims of William Selby**
**Allegations of Fact**

110.  Plaintiff William Selby ("Selby") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

111.  Since December 8, 2004, an continuing up to the present time, Selby was in the custody of the Delaware Department of Corrections and was housed at HRYCI.  In August 2003, prior to his incarceration, Selby was diagnosed with Diabetes (Type-2).  Since the date of that initial diagnosis, Selby has received inadequate treatment for his Diabetes, including testing of his blood sugar levels and insulin injections, in that Selby was not tested or given insulin injections on a regular basis as prescribed.

112.  On or about July 20, 2006, Selby was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Selby as "Nurse Beth" ("John Doe #1"),  used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

113.  Since July 20, 2006, Selby has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  This testing has not been carried out on a regular basis and Selby has not been informed of the results of any of the tests.

114.  As a direct and proximate result  of the conduct and acts described in Paragraph 112 herein, Selby has suffered physical and psychological pain including anxiety and depression.

### Selby Claim One
#### (42 U.S.C. § 1983 - Inadequate Medical Care)

115.  Plaintiff Selby realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 111-114 of this Complaint.

116.  In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Selby's serious

-29-

medical needs and subjected Selby to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution. In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Selby, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Selby's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

117. In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Selby's serious medical needs and subjected Selby to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Selby's diabetic condition by committing the acts alleged in Paragraph 112 herein;

(b ) as a result of the actions described in Paragraph 112 herein, defendant CMS caused Selby to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

118.  As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Selby's reasonable medical needs, Selby has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Selby Claim Two
### (Medical Negligence)

119.  Plaintiff Selby realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 111-114 of this Complaint.

120.  Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

121.  As a direct and proximate result of Defendants' failure to provide adequate medical services,  as alleged in Paragraph 112, Selby has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

**Count X - Claims of Kevin Jones**
**Allegations of Fact**

122.  Plaintiff Kevin Jones ("Kevin Jones") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

123.  Since November 2005 and continuing up to the present time, Kevin Jones was in the custody of the Delaware Department of Corrections and was housed at HRYCI.  During the time of his incarceration, Kevin Jones was diagnosed with Diabetes (Type-2).  Since the date of that initial diagnosis, Kevin Jones has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

124.  On or about July 20, 2006, Kevin Jones was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Kevin Jones as "Nurse Beth" ("John Doe #1"),  used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

125.  Since July 20, 2006, Kevin Jones has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  This testing has not been carried out on a regular basis.

126. On or about January 10, 2007, Kevin Jones was informed by Dr. Peter Binnon, one of the defendants' medical personnel, that he had tested positive for Hepatitis C.  Kevin Jones contracted Hepatitis C as a direct and proximate result of the conduct and acts described in Paragraph 124 herein.

127.  As a direct and proximate result  of the conduct and acts described in Paragraph 124 herein, Kevin Jones has suffered physical and psychological pain including anxiety and depression.

**Kevin Jones Claim One**
**(42 U.S.C. § 1983 - Inadequate Medical Care)**

128.  Plaintiff Kevin Jones realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 123-127 of this Complaint.

129.  In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Kevin Jones's serious medical needs and subjected Kevin Jones to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.   In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Kevin Jones, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Kevin Jones' medical conditions that did not meet the minimum requirements of the Eighth Amendment.

130.  In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Kevin Jones's serious medical needs and subjected Kevin Jones to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Kevin Jones's diabetic condition by committing the acts alleged in Paragraph 124 herein;

-33-

(b ) as a result of the actions described in Paragraph 124 herein, defendant CMS caused Kevin Jones to contract Hepatitis C and to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis B, HIV/AIDS and TB.

131. As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Kevin Jones's reasonable medical needs, Kevin Jones has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Kevin Jones Claim Two
### (Medical Negligence)

132. Plaintiff Kevin Jones realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 123-127 of this Complaint.

133. Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801. Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

134. As a direct and proximate result of Defendants' failure to provide adequate medical services,  as alleged in Paragraph 124, Kevin Jones has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count XI - Claims of James Smith
### Allegations of Fact

135. Plaintiff James Smith ("James Smith") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

136.  Since December 2005, and continuing up to the present time, James Smith was in the custody of the Delaware Department of Corrections and was housed at HRYCI.  In 1988, prior to his incarceration, James Smith was diagnosed with Diabetes (Type-2).  Since the date of that initial diagnosis, James Smith has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

137.  On or about July 20, 2006, James Smith was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to James Smith as "Nurse Beth" ("John Doe #1"),  used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

138.  Since July 20, 2006, James Smith has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  This testing has not been carried out on a regular basis and James Smith has not been informed of the results of any of the tests.

139.   As a direct and proximate result  of the conduct and acts described in Paragraph 112 herein, James Smith has suffered physical and psychological pain including anxiety and depression.

### James Smith Claim One
### (42 U.S.C. § 1983 - Inadequate Medical Care)

140.  Plaintiff James Smith realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 136-139 of this Complaint.

141.  In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to James Smith's serious medical needs and subjected James Smith to cruel and unusual punishment under color of

-35-

state law in violation of the Eighth Amendment to the United States Constitution. In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including James Smith, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff James Smith's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

142. In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to James Smith's serious medical needs and subjected James Smith to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of James Smith's diabetic condition by committing the acts alleged in Paragraph 137 herein;

(b ) as a result of the actions described in Paragraph 137 herein, defendant CMS caused James Smith to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

143. As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference James Smith's reasonable medical needs, James

Smith has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### James Smith Claim Two
### (Medical Negligence)

144.   Plaintiff James Smith realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 136-139 of this Complaint.

145.   Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.   Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

146.   As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 137, James Smith has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count XII - Claims of Paul Miller
### Allegations of Fact

147.   Plaintiff Paul Miller ("Miller") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

148.   Since May 2006, and continuing up to the present time, Miller was in the custody of the Delaware Department of Corrections and was housed at HRYCI.   Prior to his incarceration, Miller was diagnosed with Diabetes (Type-2).   Since the date of that initial diagnosis, Miller has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

149.   On or about July 20, 2006, Miller was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to

-37-

Miller as "Nurse Beth" ("John Doe #1"), used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

150.  Since July 20, 2006, Miller has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  Sometime after the testing began, Miller learned that he had contracted Hepatitis C.

151.  As a direct and proximate result of the conduct and acts described in Paragraph 149 herein, Miller has suffered physical and psychological pain including anxiety and depression.

**Miller Claim One**
**(42 U.S.C. § 1983 - Inadequate Medical Care)**

152.  Plaintiff Miller realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 148-151 of this Complaint.

153.  In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Miller's serious medical needs and subjected Miller to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.  In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Miller, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

-38-

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Miller's medical conditions that did not meet the minimum requirements of the Eighth Amendment.

154.   In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Miller's serious medical needs and subjected Miller to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Miller's diabetic condition by committing the acts alleged in Paragraph 149 herein;

(b ) as a result of the actions described in Paragraph 149 herein, defendant CMS caused Miller to be exposed to the risk of contracting other diseases and conditions, such as HIV/AIDS and TB.

155.   As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Miller's reasonable medical needs, Miller has suffered and will continue to suffer extreme physical and psychological pain, physical injury and  emotional distress.

### Miller Claim Two
### (Medical Negligence)

156.   Plaintiff Miller realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 148-151of this Complaint.

157.   Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees

failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

158.    As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 149, Miller has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count XIII - Claims of Terrance Sirmans
### Allegations of Fact

159.    Plaintiff Terrance Sirmans ("Sirmans") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

160.    Since December 2005, and continuing through December 2007, Sirmans was in the custody of the Delaware Department of Corrections and was housed at HRYCI. On or about 1992, prior to his incarceration, Sirmans was diagnosed with Diabetes (Type-2). Since the date of that initial diagnosis, Sirmans has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

161.    On or about July 20, 2006, Sirmans was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Sirmans as "Nurse Beth" ("John Doe #1"), used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

162.    Since July 20, 2006, Sirmans has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle. This testing has not been carried out on a regular basis and Sirmans has not been informed of the results of any of the tests.

-40-

163.   As a direct and proximate result of the conduct and acts described in Paragraph 161 herein, Sirmans has suffered physical and psychological pain including anxiety and depression.

**Sirmans Claim One**
**(42 U.S.C. § 1983 - Inadequate Medical Care)**

164.   Plaintiff Sirmans realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 160-163 of this Complaint.

165.   In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Sirmans's serious medical needs and subjected Sirmans to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.   In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Sirmans, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Sirmans' medical conditions that did not meet the minimum requirements of the Eighth Amendment.

166.   In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Sirmans's serious medical needs and subjected Sirmans to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

-41-

(a) CMS failed to provide constitutionally adequate medical care of Sirmans's diabetic condition by committing the acts alleged in Paragraph 161 herein;

(b ) as a result of the actions described in Paragraph 161 herein, defendant CMS caused Sirmans to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

167.   As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Sirmans's reasonable medical needs, Sirmans has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Sirmans Claim Two
### (Medical Negligence)

168.   Plaintiff Sirmans realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 160-163 of this Complaint.

169.   Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

170.   As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 161, Sirmans has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count XIV - Claims of Samuel Jones
### Allegations of Fact

171.  Plaintiff Samuel Jones ("Samuel Jones") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

172.  At all times relevant hereto, Samuel Jones was in the custody of the Delaware Department of Corrections and was housed at HRYCI.  At the time of his incarceration, Samuel Jones had been diagnosed with Diabetes (Type-2).  Since the date of that initial diagnosis, Samuel Jones has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

173.  On or about July 20, 2006, Samuel Jones was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Samuel Jones as "Nurse Beth" ("John Doe #1"),  used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

174.  Since July 20, 2006, Samuel Jones has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  This testing has not been carried out on a regular basis and Samuel Jones has not been informed of the results of any of the tests.

175.  As a direct and proximate result  of the conduct and acts described in Paragraph 173 herein, Samuel Jones has suffered physical and psychological pain including anxiety and depression.

### Samuel Jones Claim One
### (42 U.S.C. § 1983 - Inadequate Medical Care)

176.  Plaintiff Samuel Jones realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 172-175 of this Complaint.

-43-

177.  In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Samuel Jones's serious medical needs and subjected Samuel Jones to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.  In particular, defendants Taylor, Talley and Williams:

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Samuel Jones, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Samuel Jones' medical conditions that did not meet the minimum requirements of the Eighth Amendment.

178.  In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Samuel Jones's serious medical needs and subjected Samuel Jones to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Samuel Jones's diabetic condition by committing the acts alleged in Paragraph 173 herein;

(b ) as a result of the actions described in Paragraph 173 herein, defendant CMS caused Samuel Jones to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

179. As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Samuel Jones's reasonable medical needs, Samuel Jones has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Samuel Jones Claim Two
### (Medical Negligence)

180. Plaintiff Samuel Jones realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 172-175 of this Complaint.

181. Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801. Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

182. As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 173, Samuel Jones has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

### Count XV - Claims of John Chavous
### Allegations of Fact

183. Plaintiff John Chavous ("Chavous") realleges and incorporates by reference herein the allegations in paragraphs 1-12 of this Complaint.

184. At all times relevant hereto, Chavous was in the custody of the Delaware Department of Corrections and was housed at HRYCI since December 2005. At the time of his incarceration, Chavous had been diagnosed with Diabetes (Type-2). Since the date of that initial diagnosis,

Chavous has received treatment for his Diabetes, including testing of his blood sugar levels and insulin injections.

185.  On or about July 20, 2006, Chavous was informed by officials at HRYCI that on one or more occasions between April 10, 2006 and July 9, 2006 a nurse employed by CMS, known to Chavous as "Nurse Beth" ("John Doe #1"),  used a single hypodermic needle/syringe to draw blood from himself and other inmates for testing of blood sugar levels and then used the same needle /syringe to draw insulin from a multiple dose vial and inject him with said insulin.

186.  Since July 20, 2006, Chavous has been tested by CMS personnel for a variety of diseases that he might have contracted as a result of being injected on one or more occasions with a contaminated needle.  This testing has not been carried out on a regular basis and Chavous has not been informed of the results of any of the tests.

187.  As a direct and proximate result  of the conduct and acts described in Paragraph 185 herein, Chavous has suffered physical and psychological pain including anxiety and depression.

### John Chavous Claim One
### (42 U.S.C. § 1983 - Inadequate Medical Care)

188.  Plaintiff John Chavous ("Chavous") realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 184-187 of this Complaint.

189.  In violation of 42 U.S.C. § 1983, defendants Taylor, Talley and Williams, acting in their individual and official capacities, have acted with deliberate indifference to Chavous's serious medical needs and subjected Chavous to cruel and unusual punishment under color of state law in violation of the Eighth Amendment to the United States Constitution.  In particular, defendants Taylor, Talley and Williams:

-46-

(a) adopted and implemented policies and practices which were intended to contain the costs of providing medical services to the plaintiffs, including Chavous, and which they either knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment.

(b) adopted and implemented policies and practices which encouraged CMS to provide for testing and treatment for plaintiff Chavous' medical conditions that did not meet the minimum requirements of the Eighth Amendment.

190. In violation of 42 U.S.C. § 1983, defendant CMS, acting through its agents, servants and employees, through their failure to provide adequate medical care, acted with deliberate indifference to Chavous's serious medical needs and subjected Chavous to cruel and unusual punishment under color of state law in violation of the Eighth Amendment in that:

(a) CMS failed to provide constitutionally adequate medical care of Chavous's diabetic condition by committing the acts alleged in Paragraph 185 herein;

(b ) as a result of the actions described in Paragraph 185 herein, defendant CMS caused Chavous to be exposed to the risk of contracting other diseases and conditions, such as Hepatitis C, HIV/AIDS and TB.

191. As a direct and proximate result of defendant CMS's failure to provide adequate medical care and their deliberate indifference Chavous's reasonable medical needs, Chavous has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

-47-

**Chavous Claim Two**
**(Medical Negligence)**

192.   Plaintiff Chavous realleges and incorporates by reference herein the allegations in Paragraphs 1-12 and Paragraphs 184-187 of this Complaint.

193.   Defendant CMS and its John Doe Employees are "health care providers" within the meaning of 18 *Del.C.* §6801.  Defendant CMS, acting through its agents, servants and employees failed to render and provide medical services in conformity with the applicable standards of care and committed medical negligence within the meaning of 18 *Del.C.* §6801.

194.   As a direct and proximate result of Defendants' failure to provide adequate medical services, as alleged in Paragraph 185, Chavous has suffered and will continue to suffer extreme physical and psychological pain, physical injury and emotional distress.

WHEREFORE, the Plaintiffs herein respectfully demand the following relief:

(a)  That this Court enter judgment in favor of each individual plaintiff and against the  defendants for damages, both compensatory and punitive, in an amount to be proven at trial;

(b)  That this Court enter a judgment declaring that the defendants' policies, practices, acts and omissions as described herein violate plaintiff's rights as guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States;

(c)  That this Court permanently enjoin defendants, their officers, agents, employees and successors in office, along with those acting in concert with them, from engaging in the unlawful practices described herein and further shape injunctive relief to ensure that plaintiffs will no longer be subjected to the treatment alleged herein

(d)  That this Court award plaintiffs their costs and attorneys' fees in such amount as this Court deems reasonable, pursuant to 42 U.S.C. § 1988;

-48-

(e)  For such other and further relief as the Court may deem appropriate under the circumstances.

_/s/ Joseph M. Bernstein_
JOSEPH M. BERNSTEIN (#780)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: jmbernstein@embarqmail.com

_/s/ Bruce L. Hudson_
BRUCE L.HUDSON (#1003)
800 N. King Street - Suite 302
Wilmington, DE 19801
302-656-9850
302-656-9836 (Fax)
E-mail: delaw@brucehudsonlaw.com

Dated: April 3, 2008                Attorneys for Plaintiffs

# EXHIBIT B

LEXSEE 2005 U.S. DIST. LEXIS 2625

**JOHN HAMILTON, et al., Plaintiffs, v. CIVIGENICS, et al., Defendants.**

**Civil Action No. 03-826 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 2625*

**February 22, 2005, Decided**

**DISPOSITION:** Defendants' motions to dismiss granted.

**COUNSEL:** [*1] For John H. Hamilton, Plaintiff, Pro se, Farmington, DE.

For Rodney Callahan, Plaintiff, Pro se, SCI, Georgetown, DE.

For Orin Turner, Plaintiff, Pro se, SCI, Georgetown, DE.

For Andre L. Parker, Plaintiff, Pro se, SCI, Georgetown, DE.

For Jr. Juan Martinez, Plaintiff, Pro se, SCI, Georgetown, DE.

For Lee Ross, Plaintiff, Pro se, SCI, Georgetown, DE.

For Thomas Norwood, Plaintiff, Pro se, SCI, Georgetown, DE.

For James Colemen, Plaintiff, Pro se, SCI, Georgetown, DE.

For Gabriel B. Nock, Plaintiff, Pro se, Morris Community Correctional Center, Dover, DE.

For Christopher Gibbs, Plaintiff, Pro se, SCI, Georgetown, DE.

For Enrico D. Bates, Plaintiff, Pro se, SCI, Georgetown, DE.

For Trevor Moncrief, Plaintiff, Pro se, SCI, Georgetown, DE.

For Michael Lewis, Plaintiff, Pro se, SCI, Georgetown, DE.

For Danny Lee Parker, Plaintiff, Pro se, SCI, Georgetown, DE.

For Larry Reich, Plaintiff, Pro se, SCI, Georgetown, DE.

For Stefan Brittingham, Plaintiff, Pro se, SCI, Georgetown, DE.

For Alex Justice, Plaintiff, Pro se, Laurel, DE.

For Benjamin McKenzie, Plaintiff, Pro se, SCI, Georgetown, DE.

For Andre Hackett, [*2] Plaintiff, Pro se, SCI, Georgetown, DE.

For John D. Rickards, Plaintiff, Pro se, SCI, Georgetown, DE.

For Richard Jones, Plaintiff, Pro se, SCI, Georgetown, DE.

For Jacquie Reynolds, Plaintiff, SCI, Georgetown, DE.

For Kevin - Williams, Plaintiff, Pro se, SCI, Georgetown, DE.

For Lennie F. Childress, Plaintiff, Pro se, SCI, Georgetown, DE.

For Billy A. Winn, Plaintiff, Pro se, New Castle, DE.

For Timothy C. Duval, Sr., Plaintiff, Pro se, SCI, Georgetown, DE.

For Mitchell Hubis, Plaintiff, Pro se, SCI, Georgetown, DE.

For Darrel D. Stanley, Plaintiff, Pro se, SCI, Georgetown, DE.

For David Fowler, Plaintiff, Pro se, SCI, Georgetown, DE.

For Curtis G. Elliott, Plaintiff, Pro se, SCI, Georgetown, DE.

For Collidge Frazier, Plaintiff, Pro se, SCI, Georgetown, DE.

For Calvin L. Allen, Plaintiff, Pro se, SCI, Georgetown, DE.

For Jeremy Geiger, Plaintiff, Pro se, SCI, Georgetown, DE.

For Shawn Hopkins, Plaintiff, Pro se, SCI, Georgetown, DE.

For Edward A. Clark, Plaintiff, Pro se, SCI, Georgetown, DE.

For Daniel M. Prouse, Plaintiff, Pro se, SCI, Georgetown, DE.

For George R. Anthony, Jr., Plaintiff, [*3] Pro se, SCI, Georgetown, DE.

For Ronald Benton, Plaintiff, Pro se, SCI, Georgetown, DE.

For Eric S. Huffstutler, Plaintiff, Pro se, SCI, Georgetown, DE.

For Dedrick Chase, Plaintiff, Pro se, SCI, Georgetown, DE.

For Virgil - Sudler, Plaintiff, Pro se, SCI, Georgetown, DE.

For Eric Tilghman, Plaintiff, Pro se, SCI, Georgetown, DE.

For Clifford T. Donnes, II, Plaintiff, Pro se, SCI, Georgetown, DE.

For Francis Worrell, Plaintiff, Pro se, SCI, Georgetown, DE.

For Alvin - Wilson, Plaintiff, Pro se, SCI, Georgetown, DE.

For Barry L. Griffith, Plaintiff, Pro se, SCI, Georgetown, DE.

For Linwood Eley, Plaintiff, Pro se, SCI, Georgetown, DE.

For Vence D. Byrd, Plaintiff, Pro se, SCI, Georgetown, DE.

For Ronald Lofland, Plaintiff, Pro se, SCI, Georgetown, DE.

For Mark A. Mulrooney, Plaintiff, Pro se, SCI, Georgetown, DE.

For Jamaal Layne, Plaintiff, Pro se, SCI, Georgetown, DE.

For Deshawn Butter, Plaintiff, Pro se, SCI, Georgetown, DE.

For Michael P. Brown, Plaintiff, Pro se, SCI, Georgetown, DE.

For Civigenics, Allen Nesbit, Theresa Evans Carter, Russell Buskirk, Dawn Burton, Michelle Reeve, Defendants: Louis [*4] J. Rizzo, Jr., Reger & Rizzo, LLP, Wilmington, DE.

For State of Delaware Department of Corrections, Defendant: Aaron R. Goldstein, Department of Justice, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory M. Sleet

**OPINION**

**MEMORANDUM**

**I. INTRODUCTION**

On August 21, 2003, John Hamilton ("Hamilton") filed this *pro se* civil rights action pursuant to *42 U.S.C. § 1983*, on behalf of himself and ninety-eight inmates (collectively, the "plaintiffs") incarcerated in the Sussex Correctional Institution ("SCI"), located in Georgetown, Delaware. [1] The complaint alleges that the State of Delaware Department of Corrections (the "DOC"), Rick

Kearney ("Kearney"), in his capacity as warden, Civigenics ("Civigenics"), Allen Nesbit ("Nesbit"), a Civigenics employee, in his capacity as program coordinator of the KEY Program, and Civigenics employees Russell Buskirk ("Buskirk"), Dawn Burton ("Burton"), Theresa Evans Carter ("Carter"), and Michelle Reeves ("Reeves") violated the plaintiffs' *First, Eighth,* and *Fourteenth Amendment* rights. 2

> 1    Hamilton was incarcerated at the time he initiated this lawsuit. On or about October 14, 2004, Hamilton was released from incarceration.

[*5]

> 2    The KEY Program is part of the KEY Therapeutic Community, a drug rehabilitation program for incarcerated addicts that is administered by Civigenics, under contract with the State of Delaware.

Presently before the court are several motions: (1) Hamilton's motions to amend; 3(2) the DOC's motion to dismiss; (3) Kearney's motion to dismiss; and (4) the Civigenics defendants' motion to dismiss. For the following reasons, the court will deny the motions to amend and grant the motions to dismiss.

> 3    At present, fifty-three plaintiffs are still involved in the litigation. Hamilton is the only plaintiff that has responded to the defendants' motions to dismiss. However, Hamilton asserts that he is "the spokesperson for all the plaintiffs," and that "his motion[s] not only serve[] him, but all the plaintiffs." (D.I. 77 P 1.) Neither the defendants nor the remaining plaintiffs oppose Hamilton's assertions. The court, therefore, will treat Hamilton as the spokesperson for all of the plaintiffs.

[*6] **II. BACKGROUND**

The plaintiffs allege that Kearney, Nesbit, and Civigenics violated their *First, Eighth,* and *Fourteenth Amendment* rights by "allowing inmates to have authority over them in violation of federal court mandates." The complaint alleges that since entering the KEY Program, on July 10, 2003, the plaintiffs have been given directives to keep their mouths shut. According to the plaintiffs, the directives violate their freedom of speech rights under the *First Amendment.*

The plaintiffs also allege violations of their *Eighth*

*Amendment* rights. Specifically, the complaint alleges that the plaintiffs have been deprived of sleep since their first night in the KEY Program because of "listen ups" that are called during the night. The complaint further alleges that the plaintiffs must lift "substantially heavy" locker boxes of other inmates during their daily cleaning requirements, and that they are required to "stand or sit tight" throughout the day. These requirements cause the plaintiffs great pain and anguish to their bodies. In addition, the complaint alleges that the plaintiffs are constantly screamed at and ridiculed by other inmates who serve as their supervisors. [*7] The plaintiffs contend that these acts constitute cruel and unusual punishment.

Lastly, the plaintiffs allege that their sentencing to the KEY Program violates their *Fourteenth Amendment* right to due process. The complaint alleges that if the plaintiffs choose not to participate in the KEY Program they are sent to the "hole," given a "write up" that adds points to their classification record, and lose all privileges for ninety days. The plaintiffs also allege that allowing inmates to supervise them violates their due process rights.

**III. STANDARD OF REVIEW**

**A. Motion to Amend**

*Rule 15 of the Federal Rules of Civil Procedure* permits a party to amend the complaint by leave of court or by written consent of the adverse party. Leave to amend a complaint should be "freely given when justice so requires." *FED. R. Civ. P. 15(a).* The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).* [*8] Specifically, an amendment would be futile for purposes of *Rule 15(a)* if, accepting all the well pleaded facts as true, the amended complaint fails to state a claim upon which relief may be granted. *See Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington, 646 F. Supp. 118, 120 (D. Del. 1986).* In other words, "the court should apply the same standards as are applied to *Rule 12(b)(6)* motions to dismiss." *Id.*

**B. Motion to Dismiss**

2005 U.S. Dist. LEXIS 2625, *8

1. *Rule 12(b)(1)*

A motion to dismiss under *Federal Rule of Civil Procedure 12(b)(1)* may present either a facial or factual challenge to subject matter jurisdiction. *Mortensen v. First Fed. Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).* The present motion makes a facial challenge to the complaint because the defendants' arguments are based solely upon the application of legal principles to the facts as alleged in the complaint. Such a motion requires the court to consider the allegations of the complaint as true and to make all reasonable inferences in the plaintiffs' favor. *See id.*

2. *Rule 12(b)(6)*

The purpose of a motion to dismiss pursuant to [*9] *Federal Rule of Civil Procedure 12(b)(6)* is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).* Thus, as in the case of a *Rule 12(b)(1)* motion, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery, 117 F.3d 723, 726 (3d Cir. 1997); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).* In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp., 838 F.2d 663, 666 (3d Cir. 1988).* However, the court need not "credit a complaint's 'bald assertions' or legal conclusions" when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3rd Cir. 1997).* A court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves, 117 F.3d at 726;* [*10] *Nami, 82 F.3d at 65* (both citing *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).* However, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).*

**IV. DISCUSSION**

**A. Motion to Amend**

Hamilton has filed two motions to amend (D.I. 47, 72). The first amended complaint asserts a claim for retaliation. Hamilton alleges that he was unjustly removed from the Civigenics KEY Program in retaliation for filing this lawsuit. [4] Hamilton further alleges that, before he was dismissed from the KEY Program, Carter yelled and screamed at him calling him the "ringleader of the lawsuit," and asked what steps he had taken in terms of the state prisoner grievance procedure. He also alleges that SCI retaliated against him by placing his home phone number on its "visitors sheet," which was then circulated [*11] to all of the prisoners.

> 4 The court notes that Hamilton now complains that he was removed from the KEY Program. However, in his original complaint, Hamilton alleges that being sentenced to the KEY program violates his right to due process.

In *Rauser v. Horn,* the Third Circuit defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed in that claim. *See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001).* The court established a three prong test for determining whether retaliation has occurred. First, the prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. *See id. at 333* (citing *Thaddeus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999)); see also Drexel v. Vaughn, 1998 U.S. Dist. LEXIS 4294, Civ.A.No. 96-3918, 1998 WL 15178, at * 7 (E.D. Pa. Apr. 2, 1998)* (determining that prisoner had engaged in constitutionally protected conduct before proceeding with retaliation inquiry). [*12] Next, the prisoner-plaintiff must show that he has suffered some adverse action at the hands of prison officials. *See Rauser, 241 F.3d at 333* (citing *Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).* A prisoner-plaintiff can satisfy this prong by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See id.* The last *Rauser* prong requires a prisoner-plaintiff to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The court employs a burden-shifting regime to determine whether a causal link exists. The prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See id.* (citing *Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977)).* The burden

then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. *See id.* If the defendants [*13] prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. *See id. at 334.*

In the present case, Hamilton has a constitutional right to pursue civil redress in federal court under *§ 1983.* Therefore, Hamilton meets the first prong of the *Rauser* test. Hamilton, however, does not satisfy the second prong of *Rauser.* As previously stated, in the first sought after amendment, Hamilton has alleged that he was removed from the KEY Program, yelled at by Carter, and that his home phone number was circulated throughout the prison building. The court finds that these events would not negatively sway a reasonable prisoner from pursuing redress in the court. As a result, the court finds that these allegations are insufficient to survive a motion to dismiss, thus rendering the amendment futile. Accordingly, the court will deny Hamilton's motion to amend. [5]

> 5    The court does not reach the third prong of the *Rauser* test because Hamilton has not satisfied the second prong.

[*14]   The second amended complaint alleges a Double Jeopardy claim. Hamilton alleges that forcing inmates to participate in the KEY Program and giving them institutional "write ups" and sanctions, in addition to program sanctions, violates the plaintiffs' *Fifth Amendment* rights. The *Double Jeopardy Clause of the Fifth Amendment* provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." *U.S. CONST. amend. V.* The *Double Jeopardy Clause* affords three protections to the criminal defendant. The first two protect against a second prosecution for the same offense after acquittal, and against a second prosecution for the same offense after conviction. *Jones v. Thomas, 491 U.S. 376, 381, 105 L. Ed. 2d 322, 109 S. Ct. 2522 (1989).* The third protection is against "'multiple punishments for the same offense' imposed in a single proceeding." *Id.* (citing *North Carolina v. Pearce, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969)).* It ensures that the sentencing court does not exceed the total punishment authorized by the legislature. *See Ohio v. Johnson, 467 U.S. 493, 499,*

*81 L. Ed. 2d 425, 104 S. Ct. 2536 (1984).*

With these protections in mind, the court turns to Hamilton's Double Jeopardy [*15] claim. The court concludes that the DOC's disciplinary guidelines do not raise a due process issue because the DOC is neither a prosecutor nor a sentencing court. Furthermore, Hamilton's complaints are not related to any judicial proceeding. Thus, Double Jeopardy does not prevent the DOC from imposing treatment program sanctions, as well as institutional sanctions or disciplinary action for the same misconduct. Hamilton's amended complaint, therefore, would not withstand a 12(b)(6) motion to dismiss and would, again, be futile. Given the foregoing, the court will deny this motion to amend.

**B. Motion to Dismiss**

1. Sovereign Immunity

a. The DOC and Warden Kearney

The plaintiffs' complaint seeks to hold the DOC and Kearney liable in their official capacities. The plaintiffs assert that the DOC is a municipality or local government entity and not the State of Delaware. According to Hamilton, the DOC operates much like the Mayor of a town in that it has the authority to regulate and set standards for the penal institutions as well as the probation and parole authorities within the State of Delaware. Thus, the DOC is a "person" under *§ 1983.* Hamilton also asserts that Kearney [*16] is a "person" under *§ 1983* because the warden is "responsible once a person is entrusted to that institution [SCI]." (D.I. 73, at 2.) The court disagrees and concludes that the doctrine of sovereign immunity bars any claims against the DOC and Kearney.

The DOC is a state agency that exists pursuant to the laws of Delaware. *See Del. Code Ann. tit. 11 §§ 6501, 6520.* Kearney, as warden of the Sussex Correctional Institute, is a state official acting under color of state law. *See Cespedes v. Coughlin, 956 F. Supp. 454, 465 (S.D.N.Y. 1997).* A suit against a state agency or state official in his or her official capacity is treated as a suit against the state. *See Hafer v. Melo, 502 U.S. 21, 25, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991).* This is so because neither a state nor its officials acting in their official capacities are "persons" under *§ 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989).* While a state is normally entitled

to sovereign immunity, Congress may have abrogated the state's immunity through a valid exercise of its power, or the state itself may have waived its immunity. *See Lavia v. Commonwealth of Pennsylvania, 224 F.3d 190, 195 (3d Cir. 2000).* [*17]

Neither of the two above-mentioned sovereign immunity exceptions are relevant here. First, the state has not waived its *Eleventh Amendment* immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam, 488 F. Supp. 775, 780 (D. Del. 1980)* (citing *Edelman v. Jordan, 415 U.S. 651, 673, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974)).* Such an express waiver may be made through clear constitutional or statutory language. *See Lavia, 224 F.3d at 195.* Neither the constitution nor any Delaware statute expressly waives Delaware's *Eleventh Amendment* sovereign immunity. *See Ospina v. Dept. of Corr., 749 F. Supp. 572, 579 (D. Del. 1990).* Therefore, Delaware has not clearly waived its immunity.

Finally, Congress has not abrogated the states' immunity for claims under *Section 1983. See Quern v. Jordan, 440 U.S. 332, 345, 59 L. Ed. 2d 358, 99 S. Ct. 1139 (1979).* Since Delaware's immunity has not been waived or abrogated, the court will dismiss the plaintiffs' claims against the DOC and Kearney in their official [*18] capacities.

b. Civigenics and Its Employees

The plaintiffs assert that Civigenics and its employees are not state actors. The plaintiffs further assert if the court finds that Civigenics and its employees were acting "under color of law," then they have waived sovereign immunity under *Del. Code Ann. tit. 10 § 4012(2)* and/or *Del. Code Ann. tit. 18 § 6511.* The court is not persuaded by either of the plaintiffs' assertions. First, Civigenics and its employees are state actors because they are employed by the State of Delaware to provide treatment to inmates and, therefore, acted under color of law for purposes of *§ 1983* when undertaking their duties in treating the plaintiffs' addictions. *See West v. Atkins, 487 U.S. 42, 48-54, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988)* (holding that a physician who is under contract with the State to provide medical services to inmates at a state-prison hospital on a part-time basis acts "under color of state law" within the meaning of *§ 1983*).

Moreover, Civigenics and its employees have not waived sovereign immunity because *Del. Code Ann. tit. 10 § 4012(2)* and *Del. Code Ann. tit. 18 § 6511* [*19] are inapplicable to these defendants. *Section 4012(2)* states that a governmental entity will be liable for negligent acts or omissions causing property damage, bodily injury, or death "in the construction, operation or maintenance of any public building or the appurtenances thereto . . ." Because Civigenics and its employees are not involved in the construction, operation, or maintenance of SCI, this provision does not apply to them. Similarly, *section 6511* has no relevance to this litigation. While *section 6511* expressly consents to suits against the State in state court, the Delaware courts have held that *section 6511* does not waive sovereign immunity to suits in federal court. *See Ospina, 749 F. Supp. 572; Kardon v. Hall, 406 F. Supp. 4 (D. Del. 1975).* As such, Civigenics and its employees are state actors and have not waived sovereign immunity. Accordingly, the court will dismiss the plaintiffs' claims against these defendants in their official capacities.

2. Individual Liability under *42 U.S.C. § 1983*

It is not clear from Hamilton's complaint whether he seeks to hold the defendants liable in their individual capacities. [*20] However, because Hamilton is a *pro se* plaintiff and because he has stated in response to the defendants' motions to dismiss that he is suing the defendants in both their official and individual capacities, the court will address Hamilton's claims against the defendants individually. *See Manchester v. Rzewnicki, 777 F. Supp. 319, 324 (D. Del. 1991)* (noting how "*pro se* complaints are read with less stringent scrutiny than formal [one]s drafted by lawyers"). In order to recover against the defendants individually, the plaintiffs must show that they were deprived of a constitutional right by a person acting under the color of state law. *See 42 U.S.C. § 1983.* As previously discussed, the defendants were acting under color of state law. Thus, the only question raised by the motions to dismiss is whether the defendants' actions violated any of the plaintiffs' rights.

The plaintiffs allege that the defendants have violated their *First, Eighth,* and *Fourteenth Amendment* rights. The complaint, however, fails to indicate any personal involvement by any of the defendants. [6] At most, the complaint alleges that Kearney and Nesbit violated the [*21] plaintiffs' rights in their supervisory roles. [7] Thus, Hamilton's claims against the defendants are premised on the doctrine of *respondeat superior.* It is

2005 U.S. Dist. LEXIS 2625, *21

well established, however, that absent some sort of personal involvement in the allegedly unconstitutional conduct, a *§ 1983* defendant cannot be held liable under a *respondeat superior* theory. *See Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994); Gay v. Petsock, 917 F.2d 768 (3d Cir. 1990).* Because the plaintiffs have failed to allege any act or omission by the defendants that violated their constitutional rights, they cannot hold the defendants liable individually. Accordingly, the court will dismiss the plaintiffs' claims against the defendants in their individual capacities.

6    For example, the plaintiffs allege that their *First Amendment* freedom of speech rights were violated when they were told to keep their mouths shut, but do not allege which, if any, of the defendants told them to keep their mouths shut.

7    Buskirk, Burton, Carter, and Reeves are not listed as defendants in the complaint's caption. Nor do any of the plaintiffs' claims allege any personal involvement by these defendants.

[*22] **V. CONCLUSION**

After reviewing Hamilton's proposed amendments, the record, and the relevant case law, the court concludes that the amendments are futile because they would not survive a motion to dismiss. Therefore, the court will deny Hamilton's motions to amend. The court further concludes that the plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief. Thus, the court will grant the defendants' motions and dismiss the present case in its entirety.

Dated: February 22, 2005

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The plaintiffs' Motions to Amend (D.I. 47, 72) are DENIED.

2. The defendants' Motions to Dismiss (D.I. 50, 67, 78) are GRANTED.

3. All claims in the plaintiffs' complaint (D.I. 5) are DISMISSED with prejudice.

4. The plaintiffs' ten outstanding motions (D.I. 27, 29, 31, 38, 40, 42, 88, 103, 104) are DENIED as moot.

5. The State defendants' Motion to Stay Discovery (D.I. 107) is DENIED as moot.

Dated: February 22, 2005

Gregory M. Sleet

UNITED STATES [*23] DISTRICT JUDGE

EXHIBIT C

3 of 4 DOCUMENTS

**RICARDO A. CASTILLO, Plaintiff v. FRANK COSTAN, VIDA DAWKTNS, and CIVIGENICS PROGRAM, Defendants**

**Civ. No. 04-210-GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 21992*

**March 31, 2006, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Castillo v. Costan, 2008 U.S. Dist. LEXIS 9816 (D. Del., Feb. 11, 2008)*

**COUNSEL:** [*1] Ricardo A. Castillo, Plaintiff, Pro se, Ricardo A. Castillo, Pro se, Newark, DE

**JUDGES:** Honorable Gregory M. Sleet, UNITED STATES DISTRICT JUDGE

**OPINION BY:** Honorable Gregory M. Sleet

**OPINION**

**MEMORANDUM**

Ricardo A. Castillo ("Castillo"), a former inmate at the Howard R. Young Correctional Institution ("HRYCI") , Wilmington, Delaware, brings this lawsuit pursuant to *42 U.S.C. § 1983*. He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to *28 U.S.C. § 1915*. (D.I. 5.) A review of the file indicated that Castillo has been released from prison. As a result, on January 17, 2006, Castillo was ordered to pay the balance of the filing fee owed or to submit a new application to proceed *in forma pauperis*. (D.I. 12.) It was recently determined that the entire filing has been paid. Therefore, the January 17, 2006 and March 30, 2006 orders (D.I. 12) are vacated. The court now proceeds to review and screen the complaint pursuant to *28 U.S.C. § 1915* and *§ 1915A*.

For the reasons discussed below, the claim against Civigenics Program is dismissed pursuant to *28 U.S.C. § 1915(e)(2)(B)* [*2] and *§ 1915A(b)(1)* as it is immune from suit.

**I. THE COMPLAINT**

Castillo seeks to assert liability against Supervisor Frank Costan ("Costan"), Counselor Vida Dawkins ("Dawkins"), and the Civigenics Program [1] ("CiviGenics") pursuant to *42 U.S.C. § 1983*. Castillo claims the defendants violated his *First Amendment* right to free speech, and although it is not quite clear, appears to claim he was retaliated against for exercising this right.

> 1   Civigenics administers a drug rehabilitation program for incarcerated addicts through a contract with the State of Delaware. *Hamilton v. Civigenics, 2005 U.S. Dist. LEXIS 2625, No. 03-826-GMS, 2005 WL 418023, at * 1 n. 2 (D.Del. Feb. 22, 2005)*.

More particularly, in his complaint Castillo describes an altercation between two inmates that occurred on December 22, 2003. The two inmates, one Hispanic and the other Black were separated. Castillo alleges he took the Hispanic inmate to his cell and stayed with him while the inmate "cooled off." He [*3] alleges that Dawkins, who was sent to investigate the matter, did not attempt to find out the Hispanic inmate's version of the events, and that she sided with the Black inmate. Castillo alleges that Dawkins then meted out punishment to the Hispanic inmate and not the Black inmate. When Castillo learned of this he protested, and because Dawkins was far away, Castillo yelled and shouted at her. Castillo alleges that Dawkins became angry and yelled at him.

Castillo further alleges that Costan was aware of the on-going racial disparities but covered it up and

threatened inmates with "30 days" if it was mentioned to the Department of Correction. Castillo makes allegations of crack cocaine smoking, and cigarette and porn sales at the institution. He alleges that he submitted written complaints regarding the activities, but the complaints kept disappearing, and that Costan tried to "shut him up". Castillo alleges that because he stood up for what he believed in, he was accused of being a threat and accused of threatening a counselor.

Castillo alleges his that *First Amendment* right to free speech was violated because he was acting on his own words, he only voiced his beliefs, and that is [*4] not a crime. The complaint alleges that Castillo was "sent to the hole" on December 24, 2003. While the complaint does not does not provide any facts regarding this apparent disciplinary measure, the court notes that the action occurred very close in time to Castillo's protest of Dawkins' actions.

As to Civigenics, Castillo alleges that it does not have Spanish speaking counselors and that it provides treatment without helping individuals with drug problems. Castillo alleges that Civigenics is robbing the State of Delaware when it makes claims of rehabilitating people who cannot speak English. Castillo seeks compensatory and punitive damages.

## II. STANDARD OF REVIEW

When a litigant proceeds *in forma pauperis, 28 U.S.C. § 1915* provides for dismissal under certain circumstances. When a prisoner seeks redress in a civil action, *28 U.S.C. § 1915A* provides for screening of the complaint by the court. Both *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)* provide that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted [*5] or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).*

The court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)*(citing *Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)).* Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure

to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*(quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).*

## III. ANALYSIS

### A. Retaliation/Free Speech

Liberally construing the complaint, Castillo alleges that he was sent to "the hole" for protesting Dawkins' punishment of a Hispanic inmate and complaining of illicit activities that were taking place at the [*6] penal institution. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under *section 1983".* *White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).* It has long been established that the *First Amendment* bars retaliation for protected speech. *See Crawford-El v. Britton, 523 U.S. 574, 592, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).* Proof of a retaliation claim requires that Castillo demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Anderson v. Davila, 125 F.3d 148, 160-61, 37 V.I. 496 (3d Cir. 1997)*(citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U. S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); see also Allah v. Seiverling, 229 F.3d 220, (3d Cir. 2000)*(a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his *First Amendment* rights" (citations [*7] omitted)).

Applying the retaliation standard and construing the complaint liberally, Castillo has stated a claim of retaliation for his exercise of a *First Amendment* right. Indeed, in light of Castillo's assertions, it may be inferred that he was the object of retaliation because of speaking out against Dawkins' actions and complaint of activities at the prison he believed were illegal.

### B. *Eleventh Amendment*

Castillo attempts to state a claim against Civigenics for not having a Spanish speaking counselor and for misrepresenting the success of its program. Because

2006 U.S. Dist. LEXIS 21992, *7

Civigenics and its employees are employed by the State of Delaware to provide treatment to inmates they are state actors. As a result, for the purposes of § 1983 Civigenics acts under color of state law. *Hamilton v. Civigenics, 2005 U.S. Dist. LEXIS 2625, No. 03-826-GMS, 2005 WL 418023, at * 5 (D.Del. Feb. 22, 2005)*(citing *West v. Atkins, 487 U.S. 42, 48-54, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)*. This court has previously determined that Civigenics as a state actor, has not waived sovereign immunity to suits in federal court. *Id.* (citing *Ospina v. Department of Corrections, 749 F.Supp. 572, 579 (D.Del. 1991)*. Accordingly, [*8] it is immune from suit under § 1983. The claims against Civigenics, therefore, are dismissed.

**IV. CONCLUSION**

For the above stated reasons, the court finds that the claims against Civigenics are factually and legally frivolous making its dismissal appropriate. Castillo is allowed to proceed with his claims against Costan and Dawkins. An appropriate order will be entered.

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

March 31, 2006

Wilmington, Delaware

**ORDER**

At Wilmington this 31st day of March, 2006, for the reasons set forth in the Memorandum issued this date,

1. The clerk of the court shall cause a copy of this order to be mailed to plaintiff.

2. The orders dated January 17, 2006 and March 30, 2006 (D.I. 12) are VACATED.

3. The claims against Civigenics Program are DISMISSED without prejudice pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*.

4. Pursuant to *Fed. R. Civ. P. 4(c)(2)* and *(d)(2)*, plaintiff shall complete and return to the Clerk of the Court an **original** "U.S. Marshal-285" form for **defendants Frank Costan and Vida Dawkins,** as well as for the Attorney General of the State of Delaware, 820 [*9] N. FRENCH STREET, WILMINGTON,

DELAWARE, 19801, pursuant to *Del. Code Ann. tit. 10 § 3103(c)*. Castillo has provided the court with one copy of the complaint for service upon each of the defendants. Plaintiff is notified that the United States Marshal will not serve the complaint until all "U.S. Marshal 285" forms have been received by the Clerk of the Court. Failure to provide the "U.S. Marshal 285" forms for the defendant(s) and the attorney general within 120 days from the date of this order may result in the complaint being dismissed or defendant(s) being dismissed pursuant to *Federal Rule of Civil Procedure 4(m)*.

5. Upon receipt of the form(s) required by paragraph 4 above, the United States Marshal shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon the defendant(s) identified in the 285 forms.

6. Within **thirty (30) days** from the date that the "Notice of Lawsuit" and "Return of Waiver" forms are sent, if an executed "Waiver of Service of Summons" form has not been received from a defendant, the United States Marshal shall personally serve said defendant(s) pursuant to *Fed. R.* [*10] *Civ. P. 4(c)(2)* and said defendant(s) shall be required to bear the cost related to such service, unless good cause is shown for failure to sign and return the waiver.

7. Pursuant to *Fed. R. Civ. P. 4(d)(3)*, a defendant who, before being served with process timely returns a waiver as requested, is required to answer or otherwise respond to the complaint within **sixty (60) days** from the date upon which the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form are sent. If a defendant responds by way of a motion, said motion shall be accompanied by a brief or a memorandum of points and authorities and any supporting affidavits.

8. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

9. NOTE: *** When an amended complaint is filed prior to service, the court will **VACATE** all previous Service Orders entered, and service **will not take place.** An amended complaint filed prior to service shall be subject to re-screening pursuant to *28 U.S.C. § 1915(e)(2)* and*§* [*11] *1915A(a)*. ***

10. NOTE: *** Discovery motions and motions for

2006 U.S. Dist. LEXIS 21992, *11

appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. ***

UNITED STATES DISTRICT JUDGE

# EXHIBIT D

1 of 4 DOCUMENTS

**KENNETH R. ABRAHAM, Plaintiff, v. STATE OF DELAWARE DEPARTMENT OF CORRECTIONS, CIVIGENICS INC., d/b/a Crest Treatment Program, LAURA SIKORA, AARON PRINCE, CORRECTIONAL MEDICAL SERVICES, NURSE BELL, LT. COSTELLO, OFFICER CPL. MANN, and WARDEN OF SUSSEX VIOLATION OF PROBATION CENTER, Defendants.**

**Civil Action No. 07-593-\*\*\*-LPS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2007 U.S. Dist. LEXIS 89411*

**December 4, 2007, Decided
December 4, 2007, Filed**

**SUBSEQUENT HISTORY:** Reconsideration denied by *Abraham v. Costello, 2008 U.S. Dist. LEXIS 3565 (D. Del., Jan. 16, 2008)*
Injunction denied by *Abraham v. Costello, 2008 U.S. Dist. LEXIS 14158 (D. Del., Feb. 25, 2008)*

**COUNSEL:** [*1] Kenneth R. Abraham, Plaintiff, Pro se, Smyrna, DE.

**JUDGES:** Sue L. Robinson, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM ORDER**

At Wilmington this 4th day of December, 2007, having screened the case pursuant to *28 U.S.C. § 1915* and *§ 1915A;*

IT IS ORDERED that plaintiff's motion for appointment of counsel is denied without prejudice with leave to renew; plaintiff's motion to amend to add defendants is denied; plaintiff will be allowed to proceed against defendants Cpl. Mann and Lt. Costello only as to the May 10, 2007 excessive force claim; and the remaining defendants and claims against them are dismissed without prejudice as frivolous and for failure to state a claim upon which relief may be granted pursuant

to *28 U.S.C. § 1915* and *§ 1915A*, for the reasons that follow:

1. **Background.** Plaintiff Kenneth R. Abraham ("plaintiff"), an inmate at the Delaware Correctional Center ("DCC"), filed this action alleging negligence, gross negligence, mental health gross malpractice, false imprisonment, assault and battery, conspiracy and violations of his constitutional rights under the *First, Fifth, Sixth, Eighth,* and *Fourteenth amendments of the U. S. Constitution.* (D.I. 2, 6) Plaintiff recently [*2] filed a motion to amend to add as defendants Department of Correction ("DOC") Commissioner Carl Danberg ("Danberg"), the warden of DCC ("DCC warden"), and counselors Spence ("Spence") and Thompson ("Thompson"). (D.I. 11) The complaint also contains a request for appointed counsel.

2. **Standard of Review.** When a litigant proceeds in forma pauperis, *28 U.S.C. § 1915* provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, *28 U.S.C. § 1915A* provides for screening of the complaint by the court. Both *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)* provide that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).*

Case 1:08-cv-00184-GMS    Document 9-5    Filed 05/27/2008    Page 3 of 10

Page 2
2007 U.S. Dist. LEXIS 89411, *2

3. In performing the court's screening function under § 1915(e)(2)(B), the court applies the standard applicable to a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*. *Fullman v. Pennsylvania Dep't of Corr., No. 4:07CV-000079, 2007 U.S. Dist. LEXIS 5316, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007)* [*3] (citing *Weiss v. Cooley, 230 F.3d 1027, 1029 (7th Cir. 2000)*. The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus, --U.S.--, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)*; *Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002)*. A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly, --U.S.--, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). A complaint does not need detailed factual allegations, however "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id. at 1965* (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). Because plaintiff proceeds [*4] pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus, --U.S.--, 127 S.Ct. 2197, 2200 (2007)* (citations omitted).

4. **Discussion.** Plaintiff began his incarceration on January 3, 2007. Plaintiff has been housed in the Security Housing Unit ("SHU") since May 16, 2007. (*Id.* at P 9, 105) Prior to that time he was a participant in defendant Civigenics' ("Civigenics") Crest drug treatment program from January 5, 2007 through April 29, 2007, and was in the Sussex Violation of Probation Center ("SVOP") from April 29, 2007 through May 13, 2007. [1] (D.I. 2, PP 7, 8, 59, 103, 104) Plaintiff alleges he rejected probation so that he could benefit from the drug treatment program. (*Id.* at P 14) Most of plaintiff's allegations concern the inadequacy of the Crest treatment program and the actions or inactions of its counselors, defendants Laura Sikora ("Sikora") and Aaron Prince ("Prince"). (*Id.* at PP 15-48, 107-111) In general, plaintiff alleges the program

is improperly run and administered, its personnel are improperly trained and supervised, classes are conducted [*5] by inmates who had no training or preparation, plaintiff's complaints about the program were ignored, and plaintiff was chastised, punished or reprimanded on several occasions by Civigenics staff for incidents "concocted" by inmates in the program. (*Id.* at PP 49- 52) Plaintiff specifically alleges Sikora ignored several of his handwritten warnings and complaints regarding the dysfunctional operation of the program. (*Id.* at P 79) Plaintiff alleges that the contract Civigenics has with the State of Delaware should be terminated because its treatment program is ineffective and based upon fraud or at least is grossly noncompliant. (*Id.* at P 100) Plaintiff alleges he was falsely accused of a program violation by the DOC staff on January 5, 2007. (*Id.* at P 102) Plaintiff alleges that inmates fear being "set back" or terminated from the Civigenics program and that wrongful or unjustified "set backs" or terminations constitute cruel and usual punishment, denial of due process, and false imprisonment. (*Id.* at PP 54, 55)

> 1    Civigenics administers a drug rehabilitation program for incarcerated addicts through a contract with the State of Delaware. *Hamilton v. Civigenics, No. 03-826-GMS, 2005 U.S. Dist. LEXIS 2625, 2005 WL 418023, at *1 n.2 (D. Del. Feb. 22, 2005)*. [*6] The Crest program is the second part of a three-step drug treatment program. Key is the first phase of the program and Aftercare is the third phase.

5. Plaintiff alleges that on April 9, 2007, he left a church service to use the bathroom and while in the bathroom was told to return to his pod and to stay there. (*Id.* at P 53) Plaintiff alleges that later he was reprimanded by an unnamed Civigenics counselor for not leaving his pod to attend a meeting. Plaintiff alleges that the incident deprived him of his constitutional right to attend the church service.

6. Plaintiff was housed at the SVOP for approximately two months beginning in late April 2007. He alleges that the SVOP warden [2] failed to properly train, supervise and discipline DOC personnel. (*Id.* at P 58) Plaintiff alleges he witnessed a "pervasive pattern and practice of serious, egregious, unlawful, and criminal verbal and physical abuse of inmates by SVOP personnel." (*Id.* at P 60) He alleges grievances are ignored, personnel constantly insult, taunt, provoke, and

threaten inmates, falsely accuse inmates of wrongdoing, and conspire to coverup their wrongdoing. [3] (*Id.* at PP 61-70)

> 2 Robert George is the warden at the SVOP.
>
> 3 Plaintiff [*7] refers to an incident on May 9, 2007 when an unnamed inmate was sprayed with a chemical agent, punched and slammed without reason or cause. The allegations are clear that plaintiff was not the inmate in question. (D.I. 2, P 71)

7. Plaintiff alleges that on May 10, 2007, while handcuffed and seated in a chair he was attacked by defendants Officer Cpl. Mann ("Mann") and Lt. Costello ("Costello"). (*Id.* at P 72) Plaintiff alleges Mann and Costello sprayed him with a chemical agent, slammed him to the pavement, kicked him in the head, deliberately injured his arm, insulted, and threatened him. (*Id.*) Plaintiff alleges he suffered injuries to his leg, head, shoulder, back, neck and arm. (*Id.*)

8. Plaintiff alleges that during a class on or about April 14, 2007, he was subjected to verbal abuse by Prince. (*Id.* at P 76) Plaintiff alleges Prince attacked him verbally, vehemently shouted in a loud belligerent voice, and made absurd, false, and ridiculous accusations and insults. (*Id.*) Plaintiff alleges Prince became verbally abusive a second time, on April 17, 2007, during a disciplinary hearing.

9. Plaintiff alleges that on May 10, 2007, while housed at SVOP, he was falsely accused by Officer Mollman [*8] [4] of talking in the chow hall and a disciplinary report issued to him. (*Id.* at 80) Plaintiff alleges that Mann was present and muttered he would spray him with a chemical agent. (*Id.*) Plaintiff alleges that Mollman threatened him and later Costello appeared and threatened and insulted plaintiff. (*Id.* at P 81)

> 4 Mollman is not a named defendant.

10. Plaintiff alleges he has a medical condition which causes uncontrollable urges to defecate and he has an enlarged prostrate which causes frequent urination. (*Id.* at 82, 83) Plaintiff alleges he informed CMS's nurses and medical technicians of his conditions upon his arrival at the DOC and they were entered into his medical record. (*Id.* at 84) He also advised Civigenics and DOC personnel of the condition. (*Id.* at 87) Plaintiff alleges that on March 23, 2007, while locked in the yard, he was

not allowed to use the bathroom even though it was an emergency. (*Id.* at PP 88-92) As a result, plaintiff urinated through the fence and was disciplined by the DOC and Civigenics. (*Id.* at 92-93) Plaintiff alleges that Prince was particularly belligerent during the disciplinary hearing. (*Id.* at P 93) He alleges that Prince and the DOC denied him access to [*9] his medical records. (*Id.*) Plaintiff alleges that as a result of this incident he was set back 30 days in the Civigenics program. (*Id.*) Plaintiff alleges he filed grievances requesting his medical records and they were ignored. (*Id.* at P 93) Plaintiff also alleges that Prince made racist statements and referred to plaintiff as a "cracker." (*Id.* at P 94)

11. Plaintiff alleges that on March 14, 2007, nurse Bell ("Bell") was distributing medication, plaintiff asked for another medication and was told by Bell that it had not been prescribed by the physician. (*Id.* at P 95) Plaintiff asked Bell to check his records and after she told him to return to his cell, she refused to identify herself to plaintiff. (*Id.*) Plaintiff alleges that Bell filed a false report against him, which stated that he was disruptive, disorderly, and had begun cursing. (*Id.*) As a result, plaintiff received a set back of several days in the drug program. (*Id.*) Plaintiff takes exception to Bell's attitude. (*Id.* at P 96) He alleges grievances he filed were ignored. (*Id.* at P 97) Plaintiff alleges that CMS fails to train, supervise, and discipline its employees and does not have an appropriate medication program for the [*10] administration of drugs (*Id.* at PP 98, 99)

12. **DOC Immunity.** The DOC, an agency of the State of Delaware, is named as a defendant. "Absent a state's consent, the *Eleventh Amendment* bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981)* (citing *Alabama v. Pugh, 438 U.S. 781, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978)*). The State of Delaware has not waived its sovereign immunity under the *Eleventh Amendment*. *See Ospina v. Department of Corr., 749 F. Supp. 572, 579 (D. Del. 1991)*. Hence, as an agency of the State of Delaware, the DOC is entitled to immunity under the *Eleventh Amendment*. *See e.g. Evans v. Ford, C.A. No. 03-868-KAJ, 2004 U.S. Dist. LEXIS 17967, 2004 WL 2009362, *4 (D. Del. Aug. 25, 2004)* (dismissing claim against DOC, because DOC is state agency and DOC did not waive *Eleventh Amendment* immunity). Plaintiff's claim against the DOC has no arguable basis in law or in fact inasmuch as it is immune from suit. Therefore, the claim is dismissed pursuant to

2007 U.S. Dist. LEXIS 89411, *10

28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

13. **Civigenics Immunity.** Civigenics is also a named defendant. Civigenics and its employees are state actors because they are employed by the State of Delaware to provide [*11] treatment to inmates. As a result, for the purposes of § 1983 Civigenics acts under color of state law. *Hamilton v. Civigenics, No. 03-826-GMS, 2005 U.S. Dist. LEXIS 2625, 2005 WL 418023, at * 5 (D. Del. Feb. 22, 2005)* (citing *West v. Atkins, 487 U.S. 42, 48-54, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).* This court has previously determined that Civigenics as a state actor, has not waived sovereign immunity to suits in federal court. *Id.* (citing *Ospina v. Department of Corrections, 749 F.Supp. 572, 579 (D. Del. 1991).* Accordingly, it is immune from suit under § 1983. The claims against Civigenics, therefore, are dismissed. *28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).*

14. **Drug Treatment Program.** The majority of plaintiff's claims revolve around his displeasure with the drug treatment program administered by Civigenics and counselors SIkora and Prince. Prisoners have no constitutional right to drug treatment or other rehabilitation. *Groppi v. Bosco, 208 Fed. Appx. 113, 115 (3d Cir. 2006); Abdul-Akbar v. Department of Corr., 910 F.Supp. 986, 1002 (D. Del.1995); see also Norris v. Frame, 585 F.2d 1183 (3d Cir. 1978); Fiallo v. De Batista, 666 F.2d 729, 730 (1st Cir. 1981); Smith v. Follette, 445 F.2d 955 (2d Cir. 1971).* Accordingly, the drug treatment [*12] claims against Civigenics, Sikora, and Prince have no basis in law and are dismissed as frivolous and for failure to state a claim upon which relief may be granted pursuant to *28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).*

15. **Due Process.** Plaintiff alleges that inmates fear being "set back" or terminated from the Civigenics program and that wrongful or unjustified "set backs" or terminations constitute cruel and usual punishment, denial of due process, and false imprisonment. Plaintiff has failed to state a due process claim and the other allegations regarding "set backs" are frivolous.

16. The *Due Process Clause* itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Conner, 515 U.S. 472, 480, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)* (quoting *Hewitt v. Helms, 459 U.S. 460, 468, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983)).* More so, state created liberty interests protected by the *Due Process Clause* are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997)* (quoting *Sandin, 515 U.S. at 484).* As previously discussed, plaintiff has no constitutional [*13] right to a drug treatment program and dismissal from said program does not impose an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life. Therefore, the claims regarding "set backs" and the drug treatment program are dismissed as frivolous and for failure to state a claim upon which relief may be granted pursuant to *28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).*

17. **False Accusations.** Plaintiff alleges that he was falsely accused of programs violations. However, the filing of a false disciplinary charge and related disciplinary sanctions, without more, do not violate his constitutional rights under the *Due Process Clause. See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).* Therefore, the court claims are dismissed pursuant to *28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).*

18. **Respondeat Superior.** Plaintiff seeks to hold the SVOP warden liable on the basis of his supervisory position. Supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).* In order for a supervisory public official [*14] to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." *Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)* (citing *City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).*

19. Plaintiff alleges in general terms that the warden failed to properly train, supervise, and discipline DOC personnel. The complaint, however, does not allege that the warden was the "driving force [behind]" plaintiff's list of alleged constitutional violations. Moreover, the complaint does not indicate that the warden was aware of plaintiff's allegations and remained "deliberately indifferent" to his plight. *Sample v. Diecks, 885 F.2d at 1118.* Accordingly, the claims against the SVOP warden are dismissed inasmuch as they have no arguable basis in law or in fact.

20. **Verbal Abuse.** Plaintiff alleges that he is the victim of verbal abuse by Prince, Costello, Mann, and various other DOC and Civigenics personnel. Verbal abuse and harassment do not rise to the level of a constitutional violation. *See Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993)*; *see* [*15] *also McBride v. Deer, 240 F.3d 1287, 1291 (10th Cir. 2001)* (taunts and threats are not an *Eighth Amendment* violation); *Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993)* (verbal harassment does not violate inmate's constitutional rights). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. *Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)* (defendant laughed at prisoner and threatened to hang him). The verbal abuse and harassment claims have no basis in law and are dismissed as frivolous and for failure to state a claim upon which relief may be granted pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*.

21. **Excessive Force.** Plaintiff alleges that he was attacked by Mann and Costello on May 10, 2007. More particularly, he alleges they sprayed him with a chemical agent, slammed him to the floor and kicked him all of which resulted in injuries to his leg, head, shoulder, back, neck and arm.

22. When analyzing an excessive force claim under the *Eighth Amendment*, the court must determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and [*16] sadistically for the very purpose of causing harm." *Whitley v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)* (citations omitted). Use of force is actionable under § 1983 when it exceeds "that which is reasonable and necessary under the circumstances." *Davidson v. O'Lone, 752 F.2d 817, 827 (3d Cir. 1984)*. The court must determine whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *Davis v. Carroll, 390 F. Supp. 2d 415, 419 (D. Del. 2005)* (citing *Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)*). Plaintiff has adequately alleged an excessive force claim against Mann and Costello and he will be allowed to proceed with this claim.

23. **Medical Needs.** Plaintiff alleges that Bell was deliberately indifferent to his serious medical needs when she failed to administer unnamed medication. Plaintiff alleges that CMS fails to train, supervise, and discipline its employees and does not have an [*17] appropriate medication administration medication program. In order to state an inadequate medical treatment claim under the *Eighth Amendment*, an inmate must allege deliberate indifference to serious medical needs constituting "unnecessary and wanton infliction of pain." *Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*.

24. When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989)*; *Miller v. Correctional Med. Sys., Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992)*. In order to establish that CMS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [Plaintiff] allege[s]." *Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003)* (because respondeat superior or vicarious liability cannot be a basis for liability under *42 U.S.C. § 1983*, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

25. A [*18] prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble, 429 U.S. at 104-05*. However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Poole v. Taylor, 466 F.Supp.2d 578, 589 (D. Del. 2006)* (citing *Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir. 2000)*). Moreover, allegations of medical malpractice are not sufficient to establish a constitutional violation. *White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990)* (citations omitted); *see also Daniels v. Williams, 474 U.S. 327, 332-34, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)* (negligence is not compensable as a constitutional deprivation).

26. As to his allegations against Bell, plaintiff makes no mention of a serious medical condition. Nor does the complaint indicate what type of medication Bell allegedly withheld. Further, plaintiff's own allegations are that Bell told him the medication at issue had not been prescribed.

Even construing the complaint liberally, as the court must, plaintiff's complaint is one of disagreement of medical care, not denial or delay of medical care. With regard to CMS, plaintiff alleges that [*19] on one incident he was not provided medication. Plaintiff makes conclusory and formulaic allegations that CMS fails to train, supervise, and discipline its employees and does not have an appropriate drug administration program. The allegations do not adequately alleged that CMS has a policy or custom that policy caused the constitutional violations plaintiff alleges. The medical needs claims against Bell and CMS have no basis in law and fact and are dismissed as frivolous and for failure to state a claim upon which relief may be granted pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*.

27. **Conditions of Confinement.** Plaintiff alleges he has medical conditions, known to the DOC, Civigenics and CMS personnel, which cause uncontrollable defecation and frequent urination. He alleges that he was denied bathroom use on one occasion, it was an emergency so he urinated through the fence, and he was disciplined for his action. It appears plaintiff attempts to raise a conditions of confinement claim.

28. A condition of confinement violates the *Eighth Amendment* only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal [*20] civilized measure of the necessities of life. *See Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)*; *Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)*. The duration of the alleged violation is a particularly important factor to be considered in a conditions of confinement case. "A filthy, overcrowded cell and a diet of 'gruel' might be tolerable for a few days and intolerably cruel for weeks or months," *Hutto v. Finney, 437 U.S. 678, 686-87, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978)*, but de minimis deprivations generally will not rise to violations of the *Eighth Amendment. See Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)* (excessive force claim).

29. Here, plaintiff complains of one isolated incident when he was not allowed to use the bathroom even though it was an emergency. The alleged violation was short in duration and occurred on only one occasions. While unpleasant, plaintiff's bathroom allegations do not state a cognizable conditions of confinement claim.

Therefore, the court the claim is dismissed as frivolous and for failure to state a claim upon which relief may be granted pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*.

30. **Religion.** Plaintiff alleges a violation of his right to exercise his religious beliefs when he [*21] left a church service to go to the bathroom, was told by a correction officer to return to his pod and stay there, and was not allowed to return to the service. When a prisoner claims that his right to exercise religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is "both sincerely held and religious in nature." *DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000)*. If so, the court must then apply the four-factor test set forth in *Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)*, to determine whether the curtailment at issue is "reasonably related to penological interests." *DeHart, 227 F.3d at 51*.

31. Plaintiff does not allege that he was not allowed to exercise his religion. Rather, plaintiff alleges he was attending service and voluntarily left the service to use the bathroom. Also, the complaint fails to name the individual who ordered plaintiff to his pod rather than allow him to return to the service, and a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)* (citing *Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980)*; [*22] *Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir.1978)*). The court finds that the claim is frivolous and fails to state a claim upon which relief may be granted. Therefore, the religion claim is dismissed pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*.

32. **Grievances.** Plaintiff makes numerous complaints that his grievances were not heard, not acted upon, or ignored. Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. *Booth v. King, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004)*. This is because inmates do not have a constitutionally protected right to the prison grievance procedure. *Burnside v. Moser, No. 04-4713, 138 Fed. Appx. 414, 416 (3d Cir. 2005)* (citations omitted) Plaintiff cannot maintain a constitutional claim based upon his allegations. The grievance claims, therefore, are

dismissed pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*.

**33. Medical Malpractice.** The first page of plaintiff's complaint states "mental health gross malpractice." (D.I. 2). He appears to allege a state claim for medical [*23] malpractice. In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. *18 Del. Code Ann. § 6801(7)*. When a party alleges medical negligence, Delaware law requires the party to produce expert medical testimony detailing: "(1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." *Bonesmo v. Nemours Found., 253 F.Supp.2d 801, 804 (D. Del. 2003)* (quoting *Green v. Weiner, 766 A.2d 492, 494-95 (Del. 2001)*) (internal quotations omitted); *18 Del. Code Ann. § 6853*. Plaintiff did not include an affidavit of merit signed by an expert witness with his complaint as is required. Therefore, the medical malpractice claim is dismissed as frivolous pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*.

**34. Miscellaneous Claims.** The first page of plaintiff's complaint also states "negligence, gross negligence . . . , assault and battery, conspiracy" apparently in an attempt to raise such claims. [5] The act of placing the foregoing words in a complaint does not suffice to state a claim. Plaintiff is required to provide the grounds of his entitlement to [*24] relief not, as he has done, set forth mere labels. Accordingly, the foregoing miscellaneous claims are dismissed as frivolous pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*.

> 5    The court addressed plaintiff's claims of malpractice and false imprisonment in paragraphs fifteen, sixteen, and thirty-four..

**35. Motion to Amend.** Plaintiff moves to amend his complaint to add DOC Commissioner Carl Danberg ("Danberg"), counselors Spence and Thompson, and the warden of DCC. [6] (D.I. 11) Plaintiff states he wishes to raise legal issues arising from the fact that these "professionals" and others have "completely abdicated their responsibilities" by allowing inmates to conduct counseling groups, teach classes, enforce rules, engage in extortion and intimidation, and control the drug treatment program. Plaintiff further states that counselors are in the building three hours per week and engage in no counseling with patient inmates. Plaintiff previously amended his complaint on October 11, 2007. (D.I. 6)

> 6    Thomas Carroll is the warden at DCC.

**36.** "After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, [*25] but 'leave shall be freely given when justice so requires.'" *Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)* (quoting *Fed. R. Civ. P. 15(a)*). The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chemical Co., 921 F.2d 484, 486-87 (3d Cir. 1990)* (citations omitted). Amendment, however, is not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indem., 151 F.R.D. 570, 574 (E.D. Pa. 1993)*. Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*; *See also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000)*. Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)*. If the proposed amendment "is frivolous or advances [*26] a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990)*.

**37.** As previously discussed, prisoners have no constitutional right to drug treatment or other rehabilitation. Moreover, it appears plaintiff seeks to hold Danberg and the DCC warden liable on the basis of their supervisory positions. As discussed above, *§ 1983* liability cannot lie under this theory. Plaintiff has not alleged that under the supervision and direction of the proposed defendants, other prisoners were allowed to violate his plaintiff's constitutional rights. Therefore, the motion to amend (D.I. 11) is **denied** inasmuch as the proposed amendment advances a claim or defense that is legally insufficient on its face.

**38. Motion for Appointment of Counsel.** Plaintiff has asked the court to appoint him counsel in various pleadings filed with the court. A pro se litigant proceeding in forma pauperis has no constitutional or

statutory right to representation by counsel. *See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).* It is within the court's discretion [*27] to seek representation by counsel for plaintiff, and this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993)* (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

39. After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) [*28] the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

*Tabron, 6 F.3d at 155-57; accord Parham, 126 F.3d at 457; Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).*

40. Plaintiff reiterates, on numerous occasions, that he was an assistant attorney general for the State of Delaware, has tried numerous cases, and examined numerous witnesses. Upon consideration of the record, the court is not persuaded that appointment of counsel is warranted at this time. Plaintiff has demonstrated an ability to present his claims and there is no evidence that prejudice will result in the absence of counsel. Moreover, this case is in its very early stages. Plaintiff's motion for appointment of counsel (D.I. 11) is **denied** without prejudice. The court has not entered a scheduling order and discovery has yet to commence. [*29] The scheduling order will contain a deadline for filing dispositive motions. Accordingly, further motions for appointment of counsel shall be deemed denied without prejudice to renew should any of plaintiff's claim survive summary judgment.

41. **Conclusion.** Plaintiff's motions to amend and for appointment of counsel are **denied.** (D.I. 11) Plaintiff is allowed to proceed against defendants Cpl. Mann and Lt. Costello only as to the May 10, 2007 excessive force claim. The remaining defendants State of Delaware Department of Correction, Civigenics Inc. d/b/a Crest Treatment Program, Laura Sikora, Aaron Prince, Correctional Medical Services, Nurse Bell, and SVOP warden and the claims against them are dismissed without prejudice as frivolous and for failure to state a claim upon which relief may be granted pursuant to *28 U.S.C. § 1915* and *§ 1915A.*

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to plaintiff.

2. Pursuant to *Fed. R. Civ. P. 4(c)(2)* and *(d)(2),* plaintiff shall provide **original** "U.S. Marshal-285" forms for **remaining defendants Cpl. Mann and Lt. Costello,** as well as for the Attorney General of the State of Delaware, 820 N. FRENCH [*30] STREET, WILMINGTON, DELAWARE, 19801, pursuant to *DEL. CODE ANN. tit. 10 § 3103(c).* **Plaintiff shall provide the court with copies of the complaint and amendment (D.I. 2, 6) for service upon the remaining defendants and the attorney general. Plaintiff is notified that the United States Marshal will not serve the complaint and its amendment until all "U.S. Marshal 285" forms have been received by the clerk of the court. Failure to provide the "U.S. Marshal 285" forms for each remaining defendant and the attorney general within 120 days of this order may result in the complaint being dismissed or defendants being dismissed pursuant to *Federal Rule of Civil Procedure 4(m).***

3. Upon receipt of the form(s) required by paragraph 2 above, the United States Marshal shall forthwith serve a copy of the complaint and its amendment (D.I. 2, 6), this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon the defendant(s) so identified in each 285 form.

4. Within **thirty (30) days** from the date that the

2007 U.S. Dist. LEXIS 89411, *30

"Notice of Lawsuit" and "Return of Waiver" forms are sent, if an executed "Waiver of Service of Summons" form has not been received from a defendant, the United [*31] States Marshal shall personally serve said defendant(s) pursuant to *Fed. R. Civ. P. 4(c)(2)* and said defendant(s) shall be required to bear the cost related to such service, unless good cause is shown for failure to sign and return the waiver.

5. Pursuant to *Fed. R. Civ. P. 4(d)(3)*, a defendant who, before being served with process timely returns a waiver as requested, is required to answer or otherwise respond to the complaint within **sixty (60) days** from the date upon which the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form are sent. If a defendant responds by way of a motion, said motion shall be accompanied by a brief or a memorandum of points and authorities and any supporting affidavits.

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE:** *** When an amended complaint is filed prior to service, the court will **VACATE** all previous service orders entered, and service **will not take place.** An amended complaint filed prior to service shall be subject to re-screening pursuant to *28 U.S.C. § 1915(e)(2)* [*32] and *§ 1915A(a)*. ***

8. **NOTE:** *** Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. ***

/s/ Sue L. Robinson

UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **J. ANTHONY HUTT, et al,** | : | |
| | : | |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **CORRECTIONAL MEDICAL SERVICES, INC.,** | : | **Civil Action No.: _____** |
| **et al ,** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

### NOTICE OF SERVICE

I, Daniel A. Griffith, Esquire hereby certifies that on this 27th day of May, 2008, a copy

of the foregoing Defendant, Correctional Medical Services, Inc.'s Opening Brief in Support of

Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) was electronically

delivered via e-file to

> Joseph M. Bernstein, Esquire
> 800 North King Street
> Suite 302
> Wilmington, DE   19801
>
> Bruce L. Hudson, Esquire
> 800 North King Street
> Suite 302
> Wilmington, DE   19801

> _____ /s/ Daniel A. Griffith _____
> Daniel A. Griffith, Esquire