IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J. ANTHONY HUTT et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | C. A. No. 08-184 GMS |
| | ) | |
| STANLEY W. TAYLOR, JR. et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

**I.     INTRODUCTION**

The plaintiffs are all current or former inmates incarcerated at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware. On April 3, 2008, the plaintiffs filed a complaint against the current and former Commissioners of the Delaware Department of Corrections (the "DDOC"); the current and former Warden of HRYCI; the current Chief of the Bureau of Management Services of the DDOC; Correctional Medical Services, Inc. ("CMS"); and unnamed "John Doe" employees of CMS (collectively, the "defendants"). The plaintiffs' claims arise under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution. The plaintiffs allege that the defendants failed to provide constitutionally adequate medical care. The plaintiffs also allege medical malpractice under Delaware law.

Presently before the court is CMS' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). After having considered the facts, the law, and the submissions of the parties, the court concludes that CMS does not enjoy immunity under the Eleventh Amendment, because it has failed to demonstrate that it is "an arm of the state." As such, CMS may be held liable in 42 U.S.C. § 1983 or state law medical negligence actions. The court concludes, however, that the

plaintiffs have failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983, because they failed to allege a custom or policy of CMS that contributed to their injuries. The court will now explain the reasoning behind its decision.

## II. FACTS

The plaintiffs, each of whom suffers from Diabetes (Type-2), were inmates incarcerated at the HRYCI. While housed at HRYCI, the plaintiffs received treatment for their diabetes. In 2006, the plaintiffs were informed by HRYCI officials that, while they were being treated for their diabetes, "Nurse Beth" ("John Doe # 1") used a single hypodermic needle to draw blood from plaintiffs to test their blood sugar levels, and then used the same needle to draw insulin from a multiple dose vial and inject them with the insulin. This exposed the inmates to a risk of certain blood-borne diseases such as Hepatitis C, HIV/AIDS, and tuberculosis. "Nurse Beth" was employed by CMS. CMS is a corporation that provides health care services to prisons and jails throughout the United States. At the time, CMS was under contract with the DDOC to provide health care services to inmates housed at HRYCI.

As a result of the foregoing conduct, the plaintiffs filed a complaint against, among others, CMS and its "John Doe" employees alleging inadequate medical care under 42 U.S. § 1983 and medical negligence under 18 Del. C. § 6801. (D.I. 1.) On May 27, 2008, CMS filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 8.)

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint if it fails to "state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences

in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89 (2007). A complaint does not need detailed factual allegations, but it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964 (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1959.

## IV. DISCUSSION

### A. Sovereign Immunity

CMS moves to dismiss the plaintiffs' claims on the basis that CMS is immune from both state and federal claims pursuant to the Eleventh Amendment. The Eleventh Amendment shields States and arms of the state from suits by individuals absent their consent. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996).

Municipalities and other local government units are "persons" subject to § 1983 liability provided they are "not considered part of the State for Eleventh Amendment purposes." *Monell v. New York City Dept. of Soc. Services*, 436 U.S. 658, 690 n. 54 (1978). A State and its officials, however, are not "persons" under § 1983 when they are acting in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). This grant of immunity is limited to States or governmental entities that are considered "arms of the state entitled to Eleventh Amendment purposes." *Id.* at 70. The Third Circuit has recognized several factors that courts must consider

3

when determining whether an entity is "an arm of the state" entitled to Eleventh Amendment immunity. The most important of these factors is whether "any judgment [against the entity] would be paid from the state treasury." *See Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1173 (3d Cir. 1997) (citations omitted). Other factors considered are the degree of autonomy the agency has and the status of the agency under state law. *Id.* These factors look at issues such as whether the entity is separately incorporated, can be sued in its own right, or is immune from state taxation. *Id.* (citations omitted).

It is under this framework that CMS' Eleventh Amendment immunity claims must be evaluated. Because CMS is the party asserting immunity, it bears the burden of production and persuasion. *See Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 229 (3d Cir. 2006) (citation omitted). There is no indication that any court has recognized CMS as an "arm of the state" for Eleventh Amendment purposes. Likewise, CMS has neither asserted nor demonstrated that "any judgment [against it] would be paid from the state treasury." *See Indep. Enters.*, 103 F.2d at 1173. Moreover, CMS is a corporate entity, and there is no indication that CMS is immune from State taxation or that CMS does not act autonomously. *See id.* CMS has provided no evidence or argument that would meet its burden to establish that it is an "arm of the state" entitled to immunity from § 1983 liability.

In arguing that it enjoys Eleventh Amendment immunity, CMS relies on two cases where the court held that another entity, Civigenics, was a state actor for Eleventh Amendment purposes. *See Castillo v. Costan*, Civ. No. 04-210-GMS, 2006 WL 891141, at * 3 (D. Del. Mar. 31, 2006); *Hamilton v. Civigenics*, Civ. No. 03-826-GMS, 2005 WL 418023, at * 4 (D. Del. Feb. 22, 2005). It is true that the court's rationale in these cases was that "Civigenics and its employees are state actors because they are employed by the State of Delaware to provide medical treatment of inmates

4

and, therefore, acted under color of law for purposes of §1983 when undertaking their duties in treating the plaintiffs' addictions." *Hamilton*, 2005 WL 418023 at *4 (cited by *Castillo*). In *Hamilton*, the court relied on the Supreme Court's decision in *West v. Atkins*, 487 U.S. 42 (1988). There, the Court held that a physician employed directly by the state who provides medical services to prison inmates at a state prison hospital "act[s] under color of law for purposes of § 1983 when undertaking his duties in treating [the plaintiff's] injury." Id. at 54. *West* was a suit against a doctor providing medical services to inmates at a state-run hospital. It did not, however, involve a §1983 claim against a medical service corporation itself or a sovereign immunity defense. Furthermore, in *West*, there was a direct nexus between the defendant physician and the State, for whom he was employed. There is no such alleged connection in the present case.

In sum, to state a claim under § 1983, a plaintiff must allege the violation of a Constitutional right and must show that the alleged violation was committed by a person acting under color of state law. *Id.* at 48 (citations omitted). A corporation under contract with the state can be considered a "person" subject to § 1983 liability so long as it is not considered an "arm of the state" for Eleventh Amendment purposes.[1] *See Monell*, 436 U.S. at 690 n.54. In *Hamilton* and *Castillo*, the court did not consider whether Civigenics was an "arm of the state" pursuant to the Third Circuit's decision in *Independent Enterprises*. Instead, the court, relying on *West*, succinctly declared that Civigenics was immune from § 1983 suit. *See Hamilton*, 2005 WL 418023 at * 5 (dismissing official capacity claims against Civigenics, as well as its employees) (citing *West*, 487 U.S. at 48-54)). For these reasons, the court finds *Hamilton* unpersuasive in the context of this case. Given the foregoing, the

---

[1] CMS' brief seems to confuse the terms "state actor" and "arm of the state." As discussed above, however, an entity that is not an arm of the state – here, CMS – can be a state actor for purposes of § 1983.

court concludes that CMS is not entitled to sovereign immunity.

### B. Policy or Custom

The plaintiffs seek to hold CMS liable for the acts of its "John Doe" employees, including "Nurse Beth," under the theory of respondeat superior. Respondeat superior cannot be a basis for § 1983 liability. Thus, a corporation under contract with the state cannot be held liable for the acts of its employees or agents under this theory. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). CMS, however, can be considered directly liable for the acts of an employee if those acts are deemed the result of a policy or custom of CMS, where the inadequacy of an existing practice is so likely to result in the violation of constitutional rights that CMS can reasonably be said to have been deliberately indifferent to the plaintiffs' serious medical needs. *See id.* at 584 (citations omitted). "Policy is made when a decision-maker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy, or edict." *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (internal quotation marks omitted) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Miller*, 802 F. Supp. at 1132. (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

In the present case, the plaintiffs correctly recognize that CMS may be held liable for the constitutional torts of its employees if a custom or policy of CMS results in deliberate indifference to their serious medical needs. (D.I. 12 at 7.) The plaintiffs' complaint, however, fails to include any allegation that CMS had such a custom or policy. The complaint alleges that a particular nurse,

6

"Nurse Beth," used needles on multiple inmates, but fails to allege that any official CMS policy contributed to Nurse Beth's conduct. Nor do the plaintiffs allege that Nurse Beth's conduct was the result of a CMS custom. The plaintiffs only aver that "CMS, acting through its agents . . . acted with deliberate indifference to [their] serious medical needs . . . ." (See, e.g., Compl. ¶ 21.) This stands in contradistinction to the plaintiffs' allegations against defendants Taylor, Talley, and Williams. With respect to Taylor, Talley, and Williams, the plaintiffs allege that they "adopted and implemented policies which were intended to contain the costs of providing medical services . . . which they knew or should have known would cause CMS to provide personnel who were not qualified or properly trained to provide medical services, and to provide medical care that did not meet the minimum requirements of the Eighth Amendment." (See, e.g., id. ¶ 20(a).) The plaintiffs also allege that defendants Taylor, Talley, and Williams "adopted and implemented policies and practices which encouraged CMS to provide testing and treatment . . . that did not meet the minimum requirements of the Eighth Amendment." (See, e.g., id. ¶ 20(b).)

The plaintiffs' underlying claim against CMS is that its employee, "Nurse Beth," committed medical negligence. There are no allegations, however, that she did so with CMS' knowledge or permission, or that any other nurses engaged in the same behavior. The plaintiffs do not allege that CMS failed to supervise its staff, or any performance review practices or policies with respect to its nurses. Finally, the plaintiffs do not allege that CMS failed to screen or train its medical employees. Essentially, the plaintiffs have not pled that their injuries are the result of any CMS custom or policy. As such, the court finds that plaintiffs have failed to state an actionable claim under § 1983 against CMS.

### C. State Law Claim

CMS argues that the state law medical negligence claims should be dismissed because it enjoys immunity under the Eleventh Amendment. CMS provides no other rationale for dismissing the plaintiffs' state law claims. As previously discussed, however, CMS has not demonstrated that it is an arm of the state. Therefore, CMS is not immune from suit under the State of Delaware Tort Claims Act, 18 Del. C. § 6801 et seq, and the court will deny this aspect of its motion.[2]

## V. CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part CMS' motion to dismiss. The court will dismiss the claims against CMS for inadequate medical care under 42 U.S.C. § 1983. The court will not, however, dismiss the state medical negligence claims against CMS, because CMS has not shown that it is entitled to Eleventh Amendment immunity.

Dated: March 30, 2009   /s/ Gregory M. Sleet
                                                                                                   CHIEF, UNITED STATES DISTRICT JUDGE

---

[2] [10 Del. C. § 4010 provides] no reference to immunity for individual entities performing traditional governmental functions through independent contractual relationships and there is absolutely nothing to suggest the General Assembly ever intended to extend this immunity beyond the limited classification of state employees or those serving on government boards. This is not only logical but practical since to conclude otherwise would open the door to allow every independent entity, who performs some work for a government agency, to a claim that it is somehow encompassed within th[e] statute and the immunities that flow from it.

*Syvy v. Landmark Eng'g, Inc.*, Civ. No. 02C-02-060 WCC, 2005 WL 791391, at * 1 (Del. Super. Mar. 31, 2005).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J. ANTHONY HUTT et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) C. A. No. 08-184 GMS |
| | ) |
| STANLEY W. TAYLOR, JR. et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. CMS' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 8) is GRANTED IN PART and DENIED IN PART.

2. The plaintiffs' claims against defendant CMS for inadequate medical care under 42 U.S.C. § 1983 are dismissed.

Dated: March 30, 2009            /s/ Gregory M. Sleet
                                 CHIEF, UNITED STATES DISTRICT JUDGE